In the Matter of the Care and Treatment of Eddie J. THOMAS, Eddie J. Thomas, Appellant,

v.

STATE of Missouri, Respondent.

In the Matter of the Care and Treatment of Desi Edwards.

Nos. SC 83186, SC 84245.

Supreme Court of Missouri,
En Banc.

May 14, 2002.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant (Case No. SC 83186).

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant (Case Nos. SC 83186 and SC 84245)

Jeremiah W. (Jay) Nixon, Atty. General, James R. Layton, State Solicitor, Alana M. Barragan–Scott, Deputy State Solicitor, Linda Lemke, Associate State Solicitor, Theodore A. Bruce, Assistant Atty. General, Jefferson City, for respondent.

## WILLIAM RAY PRICE, JR., Judge.

Eddie J. Thomas was convicted of three counts of forcible rape and two counts of forcible sodomy in 1982. His victims were children. Thomas was sentenced to twenty-three years imprisonment, of which he served seventeen. He was scheduled to be released from prison and placed on parole on July 14, 1999. On July 13, 1999, the State filed a petition to commit Thomas to the Missouri Department of Mental Health pursuant to Missouri's sexual predator law, sections 632.480 et seq., RSMo Supp. 1999.

Desi Edwards was convicted of rape in 1989. His victim was a child. Edwards was sentenced to ten years imprisonment. He was released on parole in 1997. In January 1998, Edwards was returned to prison after violating his parole by using alcohol and failing to pay fees. On November 24, 1999, the State filed a petition to commit Edwards to the Missouri Department of Mental Health pursuant to Missouri's sexual predator law, sections 632.480 et seq., RSMo Supp.1999.

At trial, juries found against Thomas and Edwards using verdict directors that read, in relevant part, as follows:

If you find from the evidence beyond a reasonable doubt:

\* \* \* \* \* \*

Third, that the respondent suffers from a mental abnormality, and

Fourth, that as a result of this abnormality the respondent is more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility, then you will find respondent is a sexually violent predator.

\* \* \* \* \* \*

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

As used in this instruction, "predatory" means acts directed towards strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization.

Thomas and Edwards both challenge the constitutionality of sections 632.480 et seq. and the validity of the instructions under which they were each committed. Their claims are controlled by two decisions of the United States Supreme Court, *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) and *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), that addressed Kansas' sexual predator law.

For all relevant purposes, the Kansas and the Missouri sexual predator statutes are the same. Both provide for the continued civil commitment of sexually violent predators. A "sexually violent predator" is defined in both statutory schemes as a "person who suffers from a mental abnormality which makes the person more likely than not to engage in ... acts of sexual violence...." And both statutes define "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." Section 632.480, RSMo; section 59–29a01 K.S.A. et seq. (2001 Supp.).

In *Hendricks,* the Kansas Supreme Court found that the Kansas statute violated Hendricks' right to substantive due process. Reversing, the United States Supreme Court upheld the validity of the statute against Hendricks' due process challenge as well as against challenges made on the grounds of double jeopardy and ex post facto lawmaking. The United States Supreme Court did not address any instructional issue, but stated:

> The mental health professionals who evaluated Hendricks diagnosed him as suffering from pedophilia, a condition the psychiatric profession itself classifies as a serious mental disorder. Hendricks even conceded that when he becomes "stressed out," he cannot "control the urge" to molest children. This admitted lack of volitional control, coupled with a prediction of dangerousness, adequately distinguishes Hendricks from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings. Hendricks' diagnosis as a pedophile, which qualifies as a "mental abnormality" under the Act, thus plainly suffices for due process purposes.

521 U.S. at 360, 117 S.Ct. 2072 (citations omitted).

In *Crane,* the Kansas Supreme Court again reversed a trial court commitment pursuant to the Kansas sexual predator act on the basis that *Hendricks* required a finding that a dangerous individual be completely unable to control his behavior. Holding that such a reading of *Hendricks* was overly restrictive, the United States Supreme Court explained that:

> ... [In *Hendricks*] we did not give to the phrase "lack of control" a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. *It is enough to say that there must be proof of serious difficulty in controlling behavior.* And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, *must be sufficient to distinguish the dangerous sexual offender whose mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.* (emphasis supplied) 534 U.S. at 870, 122 S.C. 867, 870, 151 L.Ed.2d 856 (emphasis supplied).

■ Both *Hendricks* and *Crane* make clear that sexual predator statutes as enacted in Kansas and Missouri are constitutional so long as the mental abnormality causes the individual "serious difficulty in controlling his behavior." Accordingly, to be constitutional under *Crane,* the instruction must require that the "degree" [1] to which the person cannot control his behavior is "serious difficulty".[2] Although the instructions used below required findings that "the respondent is more likely than not to engage in predatory acts of sexual violence if he is not confined", this is not enough because they did not require the juries to "distinguish the dangerous sexual offender whose mental illness, abnormality

---

**1.** The section 632.480(2) definition of "mental abnormality" specifically speaks of the "degree" of the emotional or volitional condition suffered by the offender. The Supreme Court's requirement of "serious difficulty" is a refinement of this term, not the addition of a new element.

**2.** The verdict director in *Crane* was similar to the verdict directors in *Thomas* and *Edwards* in all relevant aspects. *In re Crane,* 269 Kan. 578, 7 P.3d 285, 288 (2000).

or disorder subjects him to civil commitment from the dangerous but typical recidivist".[3]

 While there was sufficient evidence in both these cases to justify a finding of "serious difficulty" in controlling the appellants' behavior, the instructions given in these two cases did not define mental abnormality in this essential way. The record in neither case establishes that this issue was beyond contest. To comply with *Crane,* the instruction defining mental abnormality must read as follows:

> As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*

Accordingly, the judgments are reversed, and the cases are remanded for new trials as required by *Crane.*

WHITE, WOLFF, BENTON and STITH, JJ., and SMITH, Sp. J., concur.

LIMBAUGH, C.J., dissents in separate opinion filed.

TEITELMAN, J., not participating.

STEPHEN N. LIMBAUGH, JR., Chief Justice, dissenting.

I respectfully dissent.

The majority misinterprets *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), by holding that the Supreme Court's requirement of "proof of serious difficulty in controlling behavior" requires, in turn, an instruction in that exact language. In fact, the Supreme Court made no mention whatsoever of the need for a new instruction or even the need for additional findings by the jury. I would hold, instead, that the instruction given, though couched in different language, necessarily required that same "proof of serious difficulty in controlling behavior."

A closer look at the *Crane* opinion supports this conclusion. The Court begins by reaffirming the constitutionality of the Kansas statute (essentially identical to its Missouri counterpart), as written. In revisiting the statute, though, the stated purpose of the Court was simply to address the Kansas Supreme Court's interpretation of *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), and, in particular, a passage from *Hendricks* that "referred to the Kansas Act as requiring a 'mental abnormality' or 'personality disorder' that makes it 'difficult, if not impossible, for the [dangerous] person to control his dangerous behavior.'" *Kansas v. Crane,* 122 S.Ct. at 869. The Kansas Supreme Court had interpreted *Hendricks* as imposing a requirement that the state must always prove that a defendant is completely unable to control his behavior. In *Crane,* however, the United States Supreme Court rejected that interpretation, holding that "it is enough to say that there must be proof of serious difficulty in controlling behavior." *Id.* at 870. In so holding, the Supreme Court meant only to clarify the constitutional threshold on which the Kansas statute had already been upheld. Although the exact words were not used, "proof of serious difficulty in controlling behavior" was already a requirement under the Kansas statute. In other words, proving that defendant had a "mental abnormality" that makes him "more likely than not to engage in predatory acts of sexual violence" is simply one

3. The need for the Kansas Court to deal with this issue explains why the United States Supreme Court "vacated" the judgment of the Kansas Supreme Court and "remanded for further proceedings not inconsistent with this opinion" in the *Crane* case as opposed to the *Hendricks* case where the judgment of the Kansas Supreme Court was simply "reversed".

way of proving (more than enough!) that defendant had "serious difficulty in controlling behavior." In short, there is no need for a new instruction.

The first part of the *Crane* opinion bears this out because the Court reaffirmed key holdings in *Hendricks* regarding the constitutionality of the statute, and necessarily, the verdict directing instruction that tracked the language of the statute: First, "the statutory criterion for confinement embodied in the statute's words 'mental abnormality' or 'personality disorder' satisfied ' "substantive" due process requirements.' " *Id.* at 868. Second, "the Kansas 'Act unambiguously requires a finding of dangerousness either to one's self or to others,' . . . and then 'links that finding to the existence of a "mental abnormality" or "personality disorder" that makes it difficult, if not impossible, for the person to control his dangerous behavior.' " *Id.* at 869 (the passage with which the Kansas Supreme Court had difficulty). Third, "the statute's 'requirement of a "mental abnormality" or "personality disorder" is consistent with the requirements of . . . other statutes that we have upheld in that it narrows the class of persons eligible for confinement to those who are unable to control their dangerousness.' " *Id.*

In my view, *Crane's* reaffirmation of *Hendricks'* holdings precludes this Court's determination that the instruction given, which tracks the statute's requirements, "is not enough because [it] does not require the [jury] to 'distinguish the dangerous sexual offender whose mental illness, abnormality or disorder subjects him to civil commitment from the dangerous but typical recidivist.' " The instruction given does, indeed, make that distinction, and that is why the Supreme Court upheld the statute on which the instruction is based.

If, on the other hand, the majority is correct that *Crane* requires a new instruc-

tion setting out "that the 'degree' to which a person cannot control his behavior is 'serious difficulty,' " and that the instructions given, which tracked the statute, "did not define mental abnormality in this essential way," then the instruction, and thus the statute, is constitutionally infirm. A constitutionally required element is missing from the instruction, and necessarily from the statute on which it is based. The proper recourse, however, is not to rewrite the instruction, which, in effect, is to rewrite the statute, but instead to strike down the statute altogether. *See,* e.g., *Board of Educ. of City of St. Louis v. State,* 47 S.W.3d 366, 371 (Mo. banc 2001) (striking down and refusing to rewrite unconstitutional statute directing school board elections); *Associated Indus. of Mo. v. Dir. of Revenue,* 918 S.W.2d 780, 784 (Mo. banc 1996) (striking down and refusing to rewrite unconstitutional statute implementing use tax). To judicially supply a missing element, of course, is to usurp the legislative function.

To finesse this problem, footnote 1 purports to explain that the newly required finding of "serious difficulty" is merely "a refinement of this term [mental abnormality], not the addition of a new element." As I see it, however, if the instruction is unconstitutional without the new language, then the new language must mean something different than that used in the instruction that was given. Otherwise, the defendant would not be prejudiced by the language in the instruction given, and there would be no need to add the new language. It follows that if the newly required language is indeed different, then the language is not merely a "refinement," but a rewrite of the statute with the addition of a new element. The majority can only extricate itself from this predicament by recognizing that the instruction given

was sufficient and that no new language is required.

In sum, I would hold that the juries in these two cases were properly instructed and would affirm the judgments entered.