**In the Matter of the Care and Treatment of Mark HENSON, Respondent/Appellant.**

No. ED 80376.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 19, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 14, 2003.

Application for Transfer Denied March 4, 2003.

Gwenda R. Robinson, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, James R. Layton, Jefferson City, MO, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Appellant, Mark Henson, appeals from the judgment of the trial court, entered

pursuant to a jury verdict, finding that he was a sexually violent predator under sections 632.480 through 632.513 RSMo 2000 and ordering him committed to the custody of the director of the Department of Mental Health until such time as he was safe to be released. We reverse and remand.

In January 1994, Henson pleaded guilty to two counts of first degree sexual abuse. One count was based on an incident which occurred on June 1, 1993, when a woman who was walking down the street refused Henson's suggestion that she get into his car and engage in sexual activity with him. He got out of his car, pushed her to the ground, and hit her about the head. He attempted to have sexual intercourse with her, but she was able to get away. The other count was based on an incident occurring on June 4, 1993, when Henson followed a woman to her car and grabbed her breast. She ran away from him. He was arrested on June 14, 1993, when the police discovered him masturbating near the women's bathroom in a public park.

When Henson was on parole in 1997, one of the conditions of his parole was that he complete sex offender counseling. While attending a group therapy session, a visiting supervisor informed Henson that he needed to take his treatment seriously. He then grabbed and squeezed her arm hard enough to bruise it. As a result of this incident, Henson was charged with assault in the third degree. His parole was revoked and he was confined to the custody of the department of corrections (DOC). He was due to be released on April 26, 1999.

On April 21, 1999, pursuant to section 632.486, the State filed a petition initiating proceedings to find that Henson was a sexually violent predator and to commit him to the Missouri Department of Mental Health. To determine that one is a sexu-

ally violent predator, the fact finder must determine: first, whether the person has pleaded guilty, been found guilty, or been found not guilty by reason of mental disease or defect of a sexually violent offense or has been committed as a criminal sexual psychopath; second, whether the person suffers from a mental abnormality; and third, whether that mental abnormality makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Section 632.480(5). A jury verdict in such instance must be unanimous. Section 632.495.

The case was tried to the jury in July 2001. At trial, the therapist to whom he was assigned for sex offender counseling reported that Henson did not do well in group counseling. Because he touched her during a private session, she refused to counsel him individually. During the group session, he discussed his fantasies of taking a woman into the woods and having sex with her. He also wrote letters to the therapist in which he discussed his sexual fantasies. These letters prompted her supervisor to visit the group session, where the incident of Henson's grabbing her arm occurred. The therapist felt that Henson was a danger to the community for the following reasons: touching his therapists demonstrated that he didn't respect the boundaries of others; he was preoccupied with sex, excessively so even for a sex offender; and there was a danger he would act out his fantasies.

An employee of the DOC, sex offender assessment unit, testified that she interviewed Henson to assess the risk of recidivism if he were released into the community. She testified that Henson was obsessed with sex. She noted that when he was incarcerated, he gave his GED teachers notes with graphic pictures depicting the teachers involved in various sexual acts. He also wrote in his jour-

nals about sexual fantasies involving these teachers. He repeatedly used pornography in addition to his fantasies to achieve self-gratification. The DOC recommended further evaluation for Henson. The DOC employee testified that of the 125 evaluations she conducted, she recommended further evaluation on only 13, one of which was Henson's.

A psychologist, who conducted a court-ordered sexual predator evaluation, diagnosed Henson with three paraphilias. The first paraphilia was voyeurism, which he displayed as a teenager and which included spying with binoculars on women. The second was telephone scatologia, meaning that he made obscene telephone calls to women picked randomly out of the telephone book. Both of these paraphilias are accompanied by self-gratification. The third paraphilia was "otherwise specified, nonconsenting," which involved his fantasizing about and committing violent acts against women. Actuarial tables indicated that Henson was in the medium to high risk category, with about a 40 percent chance to reoffend. The psychologist noted that Henson was unable to contain his behavior even while in sex offender treatment in that it was during that time that he drew sexually graphic pictures and grabbed the therapist by the arm. In addition, while he was incarcerated in the sexual predator treatment unit, he had in his possession an informational poster about breast self-examination, he sent letters and pornographic drawings to members of the clergy, and he engaged in open and frequent masturbation. The psychologist also noted that Henson never completed the sex offender treatment program. In the psychologist's opinion, Henson suffered from a mental abnormality that predisposed him to commit an act of sexual violence.

The jury returned a verdict finding Henson to be a sexually violent predator. The trial court ordered him committed to the custody of the director of the department of mental health for control, care, and treatment until such time as his mental abnormality was so changed that he was safe to be at large. Henson appeals under section 632.495.

Because Henson's second point is dispositive, we address it first. In that point Henson charges error in the trial court's submission of Instruction No. 6, the verdict director, to the jury. He argues that the challenged instruction failed to instruct the jury that as a result of a mental abnormality, he had serious difficulty in controlling his sexually violent behavior. The instruction read as follows:

### INSTRUCTION NO. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that [Henson] pleaded guilty to two counts of first degree sexual abuse in the Circuit Count of St. Charles County, State of Missouri, on January 18, 1994, and

Second, that the offense for which [Henson] was convicted was a sexually violent offense, and

Third, that [Henson] suffers from a mental abnormality, and

Fourth, that this mental abnormality makes [Henson] more likely than not to engage in predatory acts of sexual violence if he is not confined in a secure facility,

then you will find that [Henson] is a sexually violent predator.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Henson] is not a sexually violent predator.

As used in this instruction, "sexually violent offense" includes the offense of first degree sexual abuse.

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

As used in this instruction, "predatory" means acts directed toward strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization.

Henson's counsel objected to the instruction on the ground that it did not include the requirement of complete loss of volitional capacity and control as required under *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Henson's tendered instruction, Instruction No. B, was similar to that given by the trial court, except that it included a fifth element requiring the jury to find "that this mental abnormality impairs [Henson's] volitional capacity to such a degree that he is unable to control his sexually violent behavior."

In *Hendricks,* 521 U.S. at 358, 117 S.Ct. at 2080, the United States Supreme Court upheld the constitutionality of the Kansas civil commitment statute for sexually violent predators that limited its application to persons who had a mental illness that made it "difficult, if not impossible, for the person to control his dangerous behavior." In *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), the Supreme Court rejected as overly restrictive the view that *Hendricks* required a finding that a dangerous individual be completely unable to control his behavior. The court reasoned that where lack of control is at issue, there must be proof of "serious difficulty" in controlling behavior sufficient "to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane,* 534 U.S. at 413, 122 S.Ct. at 870.

Henson argues that he is entitled to a new trial as a result of *Thomas v. State,* 74 S.W.3d 789, 790 (Mo. banc 2002), a decision handed down by the Missouri Supreme Court after Henson filed his appeal to this court. In that case, juries found two appellants to be sexual predators under sections 632.480 through 632.513, pursuant to verdict directors that included the following statutory definition of "mental abnormality":

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others.

*Id.* The appellants challenged the validity of the verdict-directing instructions submitted in their cases. *Id.* The court stated that the instructions failed to define mental abnormality as requiring a serious difficulty in controlling behavior. *Id.* at 791. The court held that to be constitutional under *Crane,* the verdict-directing instruction must define mental abnormality as follows:

As used in this instruction, "mental abnormality" means a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree *that causes the individual serious difficulty in controlling his behavior.*

*Id.* at 792 (emphasis theirs). Accordingly, the court reversed the judgments of commitments and remanded the cases for new trials. *Id.*

Here, the situation is virtually identical to that in *Thomas.* The instruction submitted by the trial court did not define mental abnormality in accordance with the directive in *Thomas.* The State conceded that in cases on appeal in which the trial court gave the statutory definition of "mental abnormality" without modification, the case must be remanded for a new trial with the instruction mandated by *Thomas.* Therefore, the present case must be remanded. Henson's second point is granted.

Returning to his first point, Henson claims that he is entitled to an outright reversal because the State did not make a submissible case, in that it did not prove that he had serious difficulty in controlling his violent behavior. In light of our holding under Point II, we disagree with Henson's contention. *Thomas* was decided after Henson was determined to be a sexually violent predator under the law in existence at that time. The *Thomas* decision reinterpreted the statute and modified the elements by requiring that the State prove that Henson had serious difficulty in controlling his violent behavior. Thus, Henson is only entitled to a remand for a new trial, at which time the case will be submitted to the jury with the instruction mandated by *Thomas.* Henson's first point is denied.

The judgment is reversed and the cause is remanded for a new trial.

SHERRI B. SULLIVAN and GLENN A. NORTON, JJ., Concur.