In the Matter of the CARE AND TREATMENT OF John W. MORGAN, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 63300.

Missouri Court of Appeals, Western District.

Nov. 22, 2005.

Emmett D. Queener, Appellate Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shawn R. McCall, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before SMITH, C.J., and LOWENSTEIN and ULRICH, JJ.

EDWIN H. SMITH, Chief Judge.

John W. Morgan appeals from the judgment of the Probate Division of the Circuit Court of Jackson County committing him to the custody of the Missouri Department of Mental Health (DMH), pursuant to the Sexually Violent Predator Act (SVP Act), §§ 632.480–.513,[1] after a jury had found, beyond a reasonable doubt, that he was a "sexually violent predator" (SVP), as defined in § 632.480(5).

The appellant raises four points on appeal. In Point I, he claims that the probate court erred in overruling his motion for a directed verdict, at the close of the State's and all the evidence, for the State's failure to make a submissible case for his commitment as a SVP, pursuant to § 632.495, because the State failed to

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

show, as required by § 632.480(5), defining a SVP, that he was "more likely than not to engage in *predatory acts* of sexual violence if not confined in a secure facility." (Emphasis added.) Because it is dispositive of the appeal, we address it alone.

Reversed and remanded.

### Facts

On April 19, 1999, pursuant to § 632.486, the State filed, in the Probate Division of the Circuit Court of Jackson County, a petition, seeking to commit the appellant to the custody of the DMH, alleging that he was a SVP, as defined in § 632.480(5). On May 18, 1999, the appellant filed a motion to dismiss, claiming that the petition failed to properly allege that he was a SVP, in that it failed to allege that he had engaged in sexual acts with strangers or individuals with whom relationships had been established or promoted for the primary purpose of victimization. On the same date, he also filed a motion to strike from the petition allegations as to certain statements he made to the police concerning past sexual offenses, which he claimed were taken in violation of his constitutional right against self-incrimination. On June 4, 1999, the probate court overruled the appellant's motion to dismiss, but sustained his motion to strike. The court granted the State leave to file an amended petition, which conformed with the requirements of § 632.486. The State filed its amended petition on June 24, 1999.

On July 23, 1999, pursuant to § 632.489.2, the probate court held a probable cause hearing on the issue of the appellant's alleged status as a SVP. On the same date, the probate court issued its findings and entered its order determining that there was probable cause to believe that the appellant was a SVP, within the meaning of § 632.480(5), and ordering, pursuant to § 632.489.4, that the DMH

have the appellant examined by a psychiatrist or psychologist to determine whether he suffered from a mental abnormality, and if he did, whether it made him more likely than not to engage in future predatory acts of sexual violence.

On November 3, 1999, the DMH filed with the probate court a written evaluation of the appellant prepared by Dr. Stephen A. Jackson, a forensic psychologist at the Western Missouri Mental Health Center. The evaluation concluded:

1. In the opinion of this examiner, the respondent suffers from a mental abnormality, specifically Pedophilia, within the meaning of section 632.480.

2. In the opinion of this examiner, with a reasonable degree of psychological certainty, as a result of his mental abnormality the respondent is more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

At some point, the probate court placed a moratorium on all SVP jury trials, including the appellant's, awaiting the U.S. Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), concerning the constitutional test for a "mental abnormality," as to an individual's ability to control his sexually violent behavior, to be found to be a SVP. In *Thomas v. State*, 74 S.W.3d 789, 792 (Mo. *banc* 2002), the Missouri Supreme Court applied the Court's decision in *Crane*, defining a "mental abnormality" as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior." In light of that decision, the appellant, on January 17, 2003, filed a motion for a supplemental evaluation from the DMH. The motion sought an order directing Dr. Jackson to

submit a new evaluation determining whether the appellant suffered from a mental abnormality as defined in *Thomas*, and if so, whether that mental abnormality made him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. On January 17, 2002, the probate court entered an order directing the DMH to file a supplemental evaluation to determine whether the appellant suffered from a "mental abnormality," as defined in *Thomas*.

On March 19, 2003, Dr. Jackson filed his supplemental evaluation, based on the information considered in the original evaluation, plus records from the Missouri Sexual Offenders Program, a Department of Corrections program designed to treat inmates convicted of sex offenses. Phase one of the program educates inmates on why they sexually offend, while phase two is the actual treatment. The appellant twice refused to enroll in phase one of the program, but eventually completed it on November 15, 1995. He started phase two, but quit after only three weeks. In his supplemental evaluation, Dr. Jackson reached a different conclusion from his initial evaluation, concluding:

> The information reviewed for this case indicates that [the appellant] suffers from Pedophilia, Sexually Attracted to Females, Nonexclusive Type and Borderline Intellectual Functioning. It is this examiner's opinion that [the appellant's] diagnoses constitute a mental abnormality which would result in [the appellant] having serious difficulty controlling his behavior. In the opinion of the examiner [the appellant] is not more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

On June 30, 2003, pursuant to § 632.492, the State's SVP petition proceeded to a jury trial. The State called as an expert medical witness, Dr. Kurt Bumby, whom the State had hired to perform the supplemental evaluation of the appellant. Dr. Bumby testified that he had determined that the appellant suffered from the mental abnormality of pedophilia, which caused him difficulty in controlling his behavior. Dr. Bumby concluded that, to a reasonable degree of psychological certainty, the appellant was more likely than not to engage in future predatory acts of sexual violence if not confined in a secure facility.

As part of its case-in-chief, the State read, over the appellant's objection, questions from the appellant's deposition of July 5, 2000, which he refused to answer, responding in each instance: "I refuse to answer because any answer I give will be used against me." The questions concerned the appellant's prior acts of sexual assault, and his refusal to participate in treatment programs offered by the Department of Corrections.

The appellant called Dr. Jackson as an expert medical witness. Dr. Jackson testified that in both of his evaluations of the appellant he concluded that he was suffering from a mental abnormality, pedophilia, which caused him serious difficulty in controlling his behavior. He further testified, however, that unlike his first evaluation, in his second evaluation, he concluded that the appellant was *not* more likely than not to engage in future predatory acts of sexual violence if not confined to a secure facility. On cross-examination by the State, Dr. Jackson was asked about this change in his opinion:

Q. Well, what have you seen about Mr. Morgan since the first time you did the evaluation to this time?

A. The more recent material I read seems to indicate he's adjusting better, is maybe not quite as angry as he was when he was first there. Maybe is perhaps more cooperative and may be, al-

though it's hard to unless you have a table and a pen and pencil, attending more activities than he was.

At the close of the State's evidence and all the evidence, the appellant made an oral motion for a directed verdict, which was overruled.

At the instruction conference, the parties agreed to use the definition of "predatory acts" found in § 632.480(3), RSMo 2000, rather than the revised definition found in § 632.480(3), RSMo Supp.2003, which was the version in effect at the time of trial. The jury, after deliberating, found beyond a reasonable doubt that the appellant was a SVP, as defined in § 632.480(5), requiring confinement in the DMH.

The appellant filed a written motion for a new trial on July 25, 2003, contending, *inter alia,* that the probate court erred in denying his motions for a directed verdict, alleging that the State failed to make a submissible case. The motion was overruled.

This appeal followed.

**I.**

In Point I, the appellant claims that the probate court erred in overruling his motion for a directed verdict, at the close of the State's and all the evidence, for the State's failure to make a submissible case for his commitment as a SVP, pursuant to § 632.495, because the State failed to show, as required by § 632.480(5), defining a SVP, that he was "more likely than not to engage in *predatory acts* of sexual violence if not confined in a secure facility." (Emphasis added.) Specifically, he claims that the State failed to make a submissible case for SVP confinement in that there was no evidence from which the jury could reasonably infer that he was more likely than not to engage in "acts directed towards strangers or individuals with whom

relationships have been established or promoted for the primary purpose of victimization," the definition of "predatory acts" found in § 632.480(3).

Our review of the probate court's denial of the appellant's motion for a directed verdict is to determine whether the State made a submissible case for SVP commitment, pursuant to § 632.495. *In re Care & Treatment of Cokes,* 107 S.W.3d 317, 321 (Mo.App.2003). "In determining whether the State made a submissible case, we are required to view the evidence and all reasonable inferences therefrom in the light most favorable to the State's case and disregard all evidence to the contrary." *Id.* In doing so, however, we will not "supply missing evidence or give the [State] the benefit of unreasonable, speculative, or forced inferences." *Id.* To make a submissible case for SVP commitment, the evidence and the reasonable inferences therefrom, viewed in a light most favorable to the State's case, must establish each of the requisite elements of an SVP commitment. *Id.* The elements must be established by substantial evidence, which is "competent evidence from which the trier of fact can reasonably decide the case." *Id.* at 323.

Pursuant to § 632.492, the Attorney General requested a jury trial to determine whether the appellant was a SVP, as defined in § 632.480(5), subject to commitment, in accordance with § 632.495. Section 632.495 provides, in pertinent part:

If the court or jury determines that the person is a *sexually violent predator,* the person shall be committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large.

(Emphasis added.) A "sexually violent predator" is defined, for purposes of the Act, in § 632.480(5) as:

... any person who suffers from a mental abnormality which makes the person more likely than not to engage in *predatory acts* of sexual violence if not confined in a secure facility and who:

(a) Has pled guilty or been found guilty, or been found not guilty by reason of mental disease or defect pursuant to section 552.030, RSMo, of a sexually violent offense; or

(b) Has been committed as a criminal sexual psychopath pursuant to section 632.475, RSMo, and statutes in effect before August 13, 1980.

(Emphasis added.) "Predatory acts" were previously defined in § 632.480(3), as: "acts directed towards strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization." That subsection was amended in 2001 such that "predatory acts" are now defined as: "acts directed towards individuals, including family members, for the primary purpose of victimization." § 632.480(3), RSMo Supp.2001.

Although the State's SVP petition was taken up and heard on June 30, 2003, after the new version of the definition of "predatory acts" had gone into effect, by agreement of the parties and with the approval of the probate court, the jury was instructed in Instruction No. 6, the State's verdict director, to apply the prior version of the definition of "predatory acts" in determining its verdict. It is in the context of this definition that the appellant claims the State failed to make a submissible case on the issue of whether he was "more likely than not to engage in *predatory acts* of sexual violence if not confined in a secure facility." § 632.480(5). (Emphasis added.)

There is nothing in the record to indicate the basis on which the probate court

and the parties agreed that the applicable version of the definition of "predatory acts" was the prior version. Perhaps it was because the SVP commitment petition was filed April 19, 1999, when the prior version was still in effect. However, regardless of the basis applied, instructing on the prior version runs afoul of the Missouri Supreme Court's decision in *In re Care & Treatment of Spencer*, 123 S.W.3d 166, 169 (Mo. *banc* 2003). There the Court held that because the "jury's determination [of whether the person is a SVP] rests on whether the person having the mental abnormality is more likely to commit *future acts* of predatory sexual violence," the revised version of the definition of "predatory acts" was the correct version to utilize. *Id.* (Emphasis added.) Hence, the version of the definition of "predatory acts" that should have been used in this case was the revised version, not the prior version that was used. The question then becomes how that error affects this appeal in light of the fact that the appellant does not raise it as an issue, but, rather, relies on the use of the prior version of the definition as the basis for his claiming that the evidence was insufficient to demonstrate, as required, that he was more likely than not to engage in future predatory acts of sexual violence.

At first blush, it would appear that the probate court's use of the prior version of the definition of "predatory acts" in this case in instructing the jury is of no consequence in that the Court in *Spencer* determined that "the original definition of the word 'predatory' subsumes the second" and that "[t]here is no substantive difference between the two definitions." *Id.* n. 9. In other words, the prior and revised versions of the definition are substantively the same. As such, regardless of which version was utilized in instructing the jury, the jury's verdict would be the same.

However, upon closer inspection, it would appear that the Court did not mean that there is no substantive difference between the two versions in all respects. Rather, what the Court meant was that there is no substantive difference between the two versions with respect to the individuals who can be considered targets of the predatory acts of sexual violence.

In the prior version of the definition of "predatory acts," the qualifying acts of victimization were limited to acts "directed towards strangers or individuals," while in the revised version, the qualifying acts of victimization were limited to acts "directed towards individuals, including family members." It was this lone aspect of the definition that the Court appears to have been focusing upon in stating in *Spencer* that there was no substantive difference between the two versions of the definition. We glean this from the fact that the Court, in opining that there was no substantive difference between the two versions of the definition, reasoned that the language of the prior version of the definition "necessarily include[d] family members regardless of [the] legislature's perceived need to amend the specific language of this provision." *Id.* In other words, the amendment to the definition was, practically speaking, without effect *as to the targets of victimization.*

■ If we were to find that the *Spencer* Court was holding that there was no substantive difference between the two versions of the definition of "predatory acts" in all respects, and not just as to the targets of victimization, we would have to conclude that the Court was rebutting, without discussion, the presumption long recognized by the Court that the "legislature is presumed not to enact meaningless provisions." *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. *banc* 1992). "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Id.* Hence, logically, it appears to us that the Court in *Spencer* was not suggesting that the amendment of § 632.480(3) was not without *any* substantive change, but rather it was without any real change only as to the targets of victimization.

Having determined that the *Spencer* Court did not hold that the two versions of § 632.480(3) are substantively the same, in all respects, the task of determining the distinctions between the two remains in determining the issue presented.

■ In interpreting statutes, we are to ascertain the intent of the legislature by giving the language used its plain and ordinary meaning. *Pavlica v. Director of Revenue,* 71 S.W.3d 186, 189 (Mo.App. 2002). Where the legislative intent is clear from the language employed in the statute, we are without authority to read into the statute an intent, which is contrary thereto. *Id.* "When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied." *Id.* (citations omitted).

The prior version of § 632.480(3), defining "predatory acts," included the phrase: "with whom relationships have been established or promoted for the primary purpose of victimization[,]" which followed "strangers and individuals." Thus, giving the language of the prior version of § 632.480(3) its plain and ordinary meaning, to constitute a "predatory act," the act had to be directed toward a stranger or individual with whom a relationship had been established or promoted for the primary purpose of victimization. In other words, under the prior version of the definition, it was not enough that the act was for the primary purpose of victimization.

There had to be evidence that a relationship had been established or promoted with the victim for the primary purpose of victimization.

In the amended or revised definition of "predatory act," the qualifying victims were changed from "strangers or individuals" to "individuals, including family members." As we discuss, *supra*, it was this change that the *Spencer* Court was referencing when it said: "the original definition of the word 'predatory' subsumes the second" and that "[t]here is no substantive difference between the two definitions." 123 S.W.3d at 169 n. 9. In addition to this change, the phrase in the prior version of the definition, "with whom relationships have been established or promoted," was deleted in the revised definition. Hence, under the revised definition, to establish a "predatory act," there does not have to be a showing that the alleged act of sexual violence was against a victim with whom the perpetrator had established or promoted a relationship for the primary purpose of victimization. There only has to be a showing that the act is for the primary purpose of victimization. This, of course, constitutes a substantive difference between the two versions of the definition, significantly changing the State's burden of proving the likelihood of the appellant's engaging in future predatory acts. Of course, this, in turn, would impact on our review of the appellant's claim in this point as to the sufficiency of the evidence for the State to make a submissible case on the issue of whether the appellant was more likely than not to engage in future "predatory acts" of sexual violence in that using the prior version of the definition, as agreed to by the State at trial, would favor the appellant in that it would require a greater showing by the State.

The State, accepting in its brief, in reliance on *Spencer*, that the two versions of the definition of "predatory act" are substantively the same, argues that the evidence was sufficient, under either version of the definition, for the jury to find that the appellant had previously engaged in *past* predatory acts of sexual violence from which it could then infer that he was more likely than not to engage in *future* predatory acts of sexual violence, requiring his commitment. In arguing that the appellant's past acts of sexual violence were predatory in nature, the State fully embraces the fact that it had to show that the appellant had established or promoted relationships with the victims of those past acts of sexual violence for the primary purpose of victimization, as expressly required by the prior version of the definition. However, as we discuss, *infra*, the State's evidence was lacking in that respect such that employing the prior version of the definition, as the jury was instructed, the State failed to make a submissible case. If the revised version had been instructed upon, the State's evidence would have been sufficient to demonstrate that the appellant's prior acts of sexual violence were predatory in nature such that the State would have made a submissible case on the issue of whether he was more likely than not to engage in future acts of sexual violence. Hence, whether the State made a submissible case ultimately turned on which version of the definition of "predatory act" was used.

Despite the fact that, in accordance with *Spencer*, the revised version of the definition of "predatory acts" was the correct version on which the jury should have been instructed, the fact remains that the State stipulated and agreed to the use of the prior version. By stipulating to the version of the definition of "predatory act" to be used in the verdict director, the State waived any objection to that instruction as to the definition of "predatory act." *See* Rule 28.03; *State v. Leisure*, 796 S.W.2d

875, 877 (Mo. banc 1990). Thus, unless there is some recognized legal basis for our saving the State, *sua sponte,* from its stipulating and agreeing at trial to the jury's being instructed on the wrong definition of "predatory act," which it does not ask us to do, our review of the appellant's claim of error as to the sufficiency of the evidence to establish that he was more likely than not to engage in future predatory acts of sexual violence must be in the context of the prior definition of a "predatory act."

We find no authority for relieving, *sua sponte,* the State of the additional burden of proof it accepted by agreeing to the jury's being instructed on the wrong version of the definition of "predatory act." If the State were the appellant, plain error review might lie to examine this issue as an allegation of error that was not briefed on appeal, under Rule 84.13(c). But, the State, as the respondent, is not required to allege error on appeal so as to invoke the possible application of the plain error rule. *State v. Ramires,* 152 S.W.3d 385, 397 (Mo.App.2004). Rather, it is the appellant who is required to allege error. *Id.* As such, plain error review would not lie to save the State from its mistake as to the applicable law on which the jury should have been instructed.[2]

As discussed, *supra,* to prove that the appellant was a SVP, as required by § 632.495 for commitment, the State was required to prove, *inter alia,* that he was "more likely than not to engage in *predatory acts* of sexual violence if not confined in a secure facility," as required by § 632.480(5). (Emphasis added.) And, to prove that he was more likely than not to

engage in "predatory acts," in accordance with the prior definition of "predatory acts" found in § 632.480(3), the State was required to prove, beyond a reasonable doubt, that he was more likely than not to engage in "acts directed towards strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization."

 In attempting to prove that the appellant was more likely than not to engage in future predatory acts of sexual violence, the State relied on evidence concerning the appellant's past acts of sexual violence and the testimony of their medical expert, Dr. Bumby. Past predatory acts of sexual violence are admissible to show that the alleged SVP is more likely than not to engage in future predatory acts of sexual violence. *In re Care & Treatment of Kapprelian,* 168 S.W.3d 708, 713 (Mo. App.2005). However, the appellant contends that evidence of his past acts of sexual violence, which he admits occurred, did not qualify as evidence of *predatory acts* of sexual violence because such evidence did not demonstrate that he established or promoted relationships with the victims for the primary purpose of victimization, as required by § 632.480(3) to qualify as "predatory acts." As to the opinion testimony of Dr. Bumby, that the appellant was more likely than not to engage in future predatory acts of sexual violence if not confined, the appellant contends that it was not supported, as required, by competent evidence in the record in that it was based on his past acts of sexual violence, which, as he contends, did not support an inference of future *predatory acts* of sexual violence. We agree.

---

2. If plain error review were available to the State so as to make a submissible case using the revised version of the definition of "predatory act," it could then argue for an affirmance based on the fact that the error in the

instruction was harmless in that it required the State to accept a greater burden than required. *See State v. Poe,* 857 S.W.2d 419, 424 (Mo.App.1993).

To carry its burden of showing that the appellant was more likely than not to engage in future predatory acts of sexual violence, the State introduced evidence that the appellant was convicted of sexual assault in the second degree in 1989 for forcing the thirteen-year-old victim to fondle his penis. The appellant and his wife had been staying with the victim's mother, an acquaintance, for approximately two months when the incident occurred. As to other prior acts of sexual violence, the State introduced evidence that the appellant, on January 23, 1993, pled guilty to two counts of sodomy and three counts of sexual abuse. The State's evidence was that in pleading guilty, the appellant admitted that on March 24, 1992, he inserted his finger into the vagina of a four-year-old girl. At the time, the appellant was playing cards with the victim's mother, an acquaintance, at her apartment. The appellant also admitted to sexually assaulting an eleven-year-old girl in November of 1991 by putting his hand down inside the victim's pants and rubbing her vagina for approximately five to ten minutes. At the time, the victim and her mother were living with the appellant's mother-in-law, along with the appellant and his wife, and others. In addition, the appellant admitted to sexually assaulting his wife's cousins, ten- and nine-year-old sisters, in October of 1991. At the time, the victims were spending the night at the appellant's mother-in-law's apartment, where the appellant and his wife were residing. He admitted that he rubbed their breasts and vaginas through their clothing.

The appellant does not contend that the State's evidence as to his past acts of sexual violence was not sufficient for the jury to infer that he was likely to re-offend as to future acts of sexual violence. Rather, he contends that the jury could not reasonably infer from the State's evidence of acts of past sexual violence that he was more likely than not to engage in future predatory acts of sexual violence because, by definition, his past acts of sexual violence were not predatory acts in that the jury could not reasonably infer, as required under the prior definition of "predatory acts," that in those instances, he established or promoted a relationship with the victims for the primary purpose of victimization. We agree. The only reasonable inference from the State's evidence as to the appellant's past acts of sexual violence is that he became acquainted with the victims as a result of familial ties and/or living arrangements, unassociated with any intent to victimize them. In addition, the record reflects that the State did not produce any evidence from which it could be reasonably inferred by the jury that, after the initial relationships were established with the victims, the appellant targeted them for victimization by intentionally cultivating close, trusting relationships with them.

The State contends that its evidence concerning the appellant's past acts of sexual violence, except the evidence concerning the March 24, 1992, sexual assault on the four-year-old girl, demonstrated that he "typically waited a few months after he started living with his victims to sexually assault them," and that the jury could infer from this "repeated behavior" that he was "predatory." We would first note that there is no evidence in the record supporting the fact that the appellant was living with the victims of the October 1991 sexual assaults on the appellant's wife's cousins. Hence, out of the five past sexual assaults mentioned in the State's evidence, only two of the victims were living at the same residence as the appellant. In any event, in making this argument as to the two assaults involving resident victims, the State fails to appreciate the requirement of the prior definition of "predatory acts," to

which it stipulated as applying in the appellant's case—that the appellant established or promoted relationships with the victims for the primary purpose of victimization. While the appellant's "repeated behavior" of sexual violence would show a likelihood that he would re-offend in a sexually violent manner, it does not show that he established or promoted relationships with the victims for the primary purpose of victimization, which is necessary to show that he was more likely than not to re-offend in a predatory manner.

The State also contends that the jury could infer from the evidence of the appellant's past acts of sexual violence, as to the two victims with whom he actually resided, that in waiting several months before sexually assaulting them, he was waiting "until [they] felt comfortable with his presence before preying on them sexually," from which the jury could infer that he was a predator. In the absence of any evidence that the appellant moved in with the victims for the primary purpose of victimizing them or that after he moved in with them, he made a conscious effort to cultivate a close, trusting relationship with them for the primary purpose of victimizing them, we fail to see how it could be inferred reasonably from the mere passage of time, after moving in with the victims, that the appellant's past acts of sexual violence were predatory in nature, under the prior definition of "predatory acts," on which the jury was instructed.

As to the sexual assault on the four-year-old girl on March 24, 1992, which occurred while the appellant was visiting the victim's mother to play cards, the State contends that the jury could infer from the appellant's "collective acts" that the assault was "predatory." The "collective acts" cited consist of the appellant's "[going] upstairs into the girl's room, cover[ing] her mouth to prevent her from screaming for help, and forcefully in-

sert[ing] his finger into her vagina. Then, realizing that her brother might have seen him, he told the boy to go to bed or get a whipping from his mother." We fail to see how this evidence sheds any light on the issue of whether the appellant established or promoted a relationship with the four-year-old victim for the primary purpose of victimizing her, the critical issue with respect to whether the State made a submissible case for a SVP commitment of the appellant.

Inasmuch as the State's evidence was insufficient for the jury to find that the appellant's past acts of sexual violence were predatory in nature, the jury could not infer solely from the appellant's past acts of sexual violence that he was more likely than not to engage in future *predatory* acts of sexual violence. A reasonable inference is:

> a logical *a priori* conclusion drawn by reason from proven or admitted facts. It is more than, and cannot be predicated on, mere surmise or conjecture. It is not a possibility that a thing could have happened or an idea founded on the probability that a thing may have occurred.

*Bond v. Cal. Comp. & Fire Co.*, 963 S.W.2d 692, 698 (Mo.App.1998). Logically, past acts of sexual violence, while relevant on the issue of whether the appellant would re-offend in a sexually violent manner, would not in and of themselves establish a likelihood of future *predatory* acts of sexual violence. Hence, in order to make a submissible case on the issue of whether the appellant was more likely than not to engage in future predatory acts of sexual violence, the State had the burden of adducing additional evidence of the likelihood of his committing future *predatory* acts of sexual violence. In that regard, the State relies on the testimony of Dr. Bumby.

Dr. Bumby, in opining that the appellant was more likely than not to engage in

future predatory acts of sexual violence, relied on the evidence of the appellant's past acts of sexual violence, and, of course, that evidence alone was not sufficient for him to conclude as he did. In addition to the evidence of the appellant's past acts of sexual violence, the record also discloses that in reaching his opinion, Dr. Bumby relied on the results from several "risk assessments" he conducted. Dr. Bumby testified that these are designed to determine the likelihood of the appellant re-offending in a sexually violent manner. The critical issue, here, however, is not whether the appellant was likely to re-offend in a sexually violent manner, he conceded that issue, but whether he was likely to re-offend in a "predatory" sexually violent manner. Hence, Dr. Bumby's opinion, that the appellant was more likely than not to engage in future predatory acts of sexual violence, was not supported by the evidence in the record.

 Generally speaking, for an expert's opinion to be admissible, it must be supported by the record. *McGuire v. Seltsam*, 138 S.W.3d 718, 722 (Mo. *banc* 2004). An expert, in rendering an opinion, can rely on facts and data not admitted at trial; however, the proponent must show that such facts and data are "of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable." § 490.065.3. There is nothing in the record showing that Dr. Bumby, in rendering his opinion, that the appellant was more likely than not to engage in future predatory acts of sexual violence, was relying on anything other than the appellant's prior acts of sexual violence and the assessment results. And, there is nothing in the record to suggest that he was relying on facts and data "of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise

reasonably reliable." Hence, because Dr. Bumby's opinion was not supported by the record, it was not sufficient, in conjunction with the evidence of the appellant's past acts of sexual violence, to create a submissible case on the issue of whether the appellant was more likely than not to engage in future *"predatory acts "* of sexual violence, as the State contends.

As we stated, *supra*, while it is reasonable to infer from the State's evidence that he is likely to re-offend in the future in a sexually violent manner, that is not the legal standard by which the legislature has bound us in determining whether a person is subject to civil commitment as a SVP. For such a commitment, we must, by law, find that the anticipated future acts of sexual violence would be predatory in nature, based on the binding statutory definition of "predatory acts." Here, there is nothing in the record from which the jury could reasonably have inferred, as required to make a submissible case for SVP commitment, that the appellant was more likely than not to engage in future *"predatory acts "* of sexual violence. To reach that conclusion, the jury would have had to engage in guesswork, conjecture, or speculation, which it could not do. *In re Care & Treatment of Cokes*, 107 S.W.3d at 323.

Because the State failed to adduce any evidence from which the jury could infer reasonably that the appellant was more likely than not to engage in future "predatory acts," as defined in the prior version of § 632.480(3), of sexual violence, the trial court erred in failing to sustain the appellant's motion for directed verdict, requiring us to reverse. However, inasmuch as it appears from the record that there was evidence available on which the State could have made a submissible case on the correct version of the definition of "predatory acts," if fully developed, we reverse and remand for a new trial. *See In re Care & Treatment of Cokes*, 107 S.W.3d at 324

(holding that in a SVP commitment case, which is a civil proceeding, we will reverse and remand for a new trial if the record indicates that there was evidence available to the State on which it could have shown that the defendant was more likely than not to engage in future predatory acts of sexual violence).

▮▮▮▮▮▮ In reversing and remanding for a new trial, the appellant's other points are rendered moot. As a general rule, "[w]hen an event occurs making a court's decision on an issue unnecessary, or makes the granting of effectual relief impossible, the issue is moot and should not be addressed." *Inman v. Mo. Dept. of Corr.,* 139 S.W.3d 180, 185 (Mo.App.2004). As an exception to this general rule, a court may review a moot claim it presents "a recurring unsettled legal issue of public interest and importance that will escape review unless the court exercises its discretionary jurisdiction." *State ex rel. County of Jackson v. Mo. Pub. Serv. Comm'n,* 985 S.W.2d 400, 403 (Mo.App.1999) (citations omitted). However, if the mooted issue "is likely to be present in a future live controversy practically capable of review," this exception to the mootness doctrine does not apply. *Id.* (citations omitted). Such is the case here.

**Conclusion**

The judgment of the circuit court, committing the appellant to the custody of the Missouri Department of Mental Health, pursuant to the Sexually Violent Predator Act, §§ 632.480–.513, is reversed and remanded for further proceedings in accordance with this opinion.

LOWENSTEIN and ULRICH, JJ., concur.