In the Matter of the Care and Treatment of Roy MUSTON, a/k/a Roy K. Muston, a/k/a Roy Kyle Muston.

Roy Muston, Respondent/Appellant.

v.

State of Missouri,
Petitioner/Respondent.

No. SD 31088.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 18, 2011.

Erika R. Eliason, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Timothy A. Blackwell, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Presiding Judge.

Roy Muston ("Muston") appeals the judgment of the trial court committing him to secure confinement in the custody of the Missouri Department of Mental Health ("the Department") as a sexually violent predator ("SVP"). We affirm the judgment of the trial court.

## Facts and Procedural History

As a child, Muston endured physical and emotional abuse, as well as at least one instance of sexual abuse by an older female cousin when Muston was nine years old. Muston performed poorly in school, had little intellectual function, and was placed in a special education program. Muston's parents voluntarily placed him into residential and psychiatric facilities. When Muston was approximately thirteen years old, he engaged in sexual behavior with ten– or eleven-year-old boys.

In 1985, at the age of fifteen, Muston fondled a four-year-old boy. About a year later, he began engaging in repeated sexual acts with a six– or seven-year-old male cousin, and was committed to institutional placement with the Texas Youth Commission. Muston had engaged in fondling or oral sex with the boy every day, and had anal sex with him one time. Muston was enrolled in treatment on two occasions when he was at the Texas Youth Commission, but treatment was unsuccessful. Muston was released at age twenty-one.

In 1990, Muston fondled a ten-year-old boy. Muston pled guilty to sexual abuse in the first degree and was sentenced to three years in the Missouri Department of Corrections ("DOC"). Muston was released on parole in the fall of 1993, but returned to prison because he absconded from a halfway house.

Muston also acknowledged uncharged incidents perpetrated on children occurring around the same time as the 1990 incident. Two of these victims were brothers whom Muston knew; they were twelve and five years old at the time. The other victim was an eight-year-old whom Muston did not know, aside from the incident.

In 1994, within ninety days of Muston's release from the DOC, Muston followed a nine-year-old boy into a church bathroom and fondled him. Muston pled guilty to sodomy and was sentenced to fifteen years.

In December 2005, while incarcerated in the DOC, Muston destroyed shower curtains where the inmates showered—admitting he did so for purposes of sexual gratification, voyeurism, and fantasy. In May 2009, while being held in the Greene County Jail, Muston attempted to fondle the genital area of his cellmate; Muston was not prosecuted for this incident.

Muston received over 200 conduct violations while incarcerated. Some were relatively minor violations, such as not showing up for a count. However, forty or fifty were more serious violations. Nineteen

violations were sexually related. Approximately eleven of the nineteen violations would have qualified as sex offenses that would have been chargeable if they had occurred outside the prison walls (e.g. exposing himself and masturbating in front of others). Muston had nineteen assault conduct violations, including one assault of a correctional officer, which was charged as a felony. Other violations involved bodily fluids—such as carrying feces, throwing feces, urinating on the floor or on objects, and threatening or attempting to throw urine at others.

In 1992, Muston refused treatment in the Missouri Sex–Offender Program ("MOSOP") in the DOC. In October 2003, Muston started treatment in MOSOP, completing Phase I in December 2003. By July 2004, Muston had difficulty with treatment, was not making progress, and eventually refused treatment. Approximately one year later, Muston again initiated Phase I of MOSOP, but never went to treatment and was dropped from the treatment program. Phase I involves assessment and preparation for the actual treatment in Phase II. In February 2006, he again refused treatment.

Dr. Steven Mandracchia, a Department psychologist at Western Missouri Mental Health Center, conducted an evaluation of Muston. Dr. Mandracchia's primary diagnosis was pedophilia. He found Muston's pedophilia caused him serious difficulty in controlling his behavior. Dr. Mandracchia also found that Muston had a well-established history of schizophrenia (psychotic disorders), major spectrum illnesses (mood disorders), and personality disorders. Muston was also diagnosed with borderline

intellectual functioning and mild retardation. Dr. Mandracchia described Muston's masturbation as a paraphilia, and that Muston's practice of masturbating in front of other people and exposing himself to other people was a part of his mental abnormality, which also contributed to his risk of recidivism.

Dr. Mandracchia evaluated Muston using the Static–99 actuarial instrument.[1] He explained that the Static–99 measures the likelihood that an individual will be convicted of another sexual offense. The factors on the Static–99 are the age of the individual; whether he ever lived with a lover for at least two years; the most recent sexual offense; whether there is any history of conviction for nonsexual violence; the number of prior sexual offenses, either charged or convicted; the number of sentencing dates for any offense; whether there are any convictions for non-contact sexual offenses; whether there is any history of victims who are strangers; and whether there are any victims who are the same sex as the perpetrator.

Dr. Mandracchia testified that Muston's score on the Static–99 was either an eight or a nine, depending on whether the 2005 shower curtain incident was used as the index offense.[2] Based on Muston's score, Dr. Mandracchia found that Muston had a thirty-eight to forty percent chance of being convicted of another sexual offense in the next ten years. A score of eight or nine is considered high risk.

Dr. Mandracchia testified that there are other factors outside the actuarial score that indicate an individual is even more

1. The Static–99 was developed in 1999; it was renormed in 2008.

2. In order for an offense to be used as an index offense, there must be some sanction imposed. Muston was placed in solitary con-

finement for the Greene County Jail incident, but had been in solitary confinement before, so Dr. Mandracchia was uncertain whether using the same sanction again would count to make the offense an index offense.

likely to re-offend. Most psychologists using the Static–99 use an anchor-and-adjust method; i.e., considering both the actuarial instrument and some adjustment up or down, depending on dynamic factors that are not measured by the actuarial instrument. Dr. Mandracchia was taught not to override the actuarial score and make adjustments to it, but he listed and discussed additional factors. Dr. Mandracchia explained the rate of re-offense is higher than the rate of re-conviction, as not all offenses that occur result in a conviction. He specifically noted that of the offenses committed on children under the age of twelve, only one in three is reported. Therefore, Dr. Mandracchia stated that the Static–99 score was automatically low because it did not actually measure re-arrest or re-offense. Dr. Mandracchia stated that he did not have a formula for determining the re-offense rate.

Dr. Mandracchia testified he was aware of a meta-analysis performed in 2004 by Dr. Hanson, who was one of the contributors to the Static–99, finding that clinical judgment accounted for fifty percent of an analysis. Dr. Mandracchia confirmed that experts in the field had gone towards more anchoring and less adjusting. The purpose of creating actuarial instruments was to limit the use of clinical judgment. Dr. Mandracchia acknowledged research findings that the anchor-and-adjust method was correct sixty-eight percent of the time, and the actuarial instrument had a seventy-two percent reliability rate.

Dr. Mandracchia concluded that Muston's conduct violations for assault were relevant to his inability to control his behavior. Dr. Mandracchia found that Muston's inability to control his behavior overall, particularly the repeated incidents of a lack of controlled sexual behavior, were indicative of a serious difficulty in controlling his sexual behavior. Because the 1994 sodomy occurred within approximately ninety days after Muston was released from confinement, Dr. Mandracchia considered the timing of this event to be an extra-actuarial risk factor. Dr. Mandracchia also determined that Muston's treatment history showed either a lack of awareness of the seriousness of his situation or a lack of willingness to change it. Dr. Mandracchia also stated that Muston's brief work history spoke to the instability of his life.

Dr. Mandracchia determined, to a reasonable degree of psychological certainty, that Muston suffered from a mental abnormality, as defined by Missouri law, and was more likely than not to commit a future act of sexual violence if not confined to a secure facility. However, Dr. Mandracchia specified that while Muston was more likely than not to re-offend, he was not more likely than not to be re-convicted.

The trial court found Muston to be an SVP and committed Muston to the custody of the Department. This appeal followed.

■ Muston contends there was insufficient evidence to prove Muston was more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility because Dr. Mandracchia's opinion was based on an improper adjustment to the Static–99. The sole issue for our determination is whether there was sufficient evidence to support the trial court's finding.

### Standard of Review

■ "The burden of proof in civil commitment proceedings is clear and convincing evidence." *In re A.B.,* 334 S.W.3d 746, 752 (Mo.App. E.D.2011). Appellate review in an SVP case is limited to a determination of whether there was sufficient evidence admitted from which a reasonable trier of fact could have found each

necessary element by clear and convincing evidence. *Id.* We do not reweigh the evidence; we determine only whether the judgment was supported by sufficient evidence. *Id.* Matters of credibility and weight of testimony are for the trier of fact to determine. *Id.* "We view the record most favorably to the judgment, disregarding all contrary evidence and inferences, and will not reverse for insufficiency of the evidence unless there is a complete absence of probative facts supporting the judgment." *Dunivan v. State,* 247 S.W.3d 77, 78 (Mo.App. S.D.2008).

## Analysis

An SVP is defined as a prior sexual offender "who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility . . . ." § 632.480(5).[3] There is no dispute as to Muston's prior sexual-offender status and that he was diagnosed with pedophilia, which constitutes a mental abnormality. Muston, however, challenges the sufficiency of the evidence establishing that his mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Specifically, Muston claims Dr. Mandracchia's opinion that Muston was more likely than not to re-offend was "based on an adjustment to the Static–99 which he used to change [Muston's] score to higher than 'more likely than not' which is improper based on the current studies." We disagree.

First, we note Muston is mistaken in claiming Dr. Mandracchia adjusted Muston's actuarial score. In fact, Dr. Mandracchia did not change Muston's Static–99 score; rather Dr. Mandracchia recognized that the Static–99 assessed the rate of *re-conviction,* not the rate of *re-offense.* He

further testified that the rate of re-offense is higher than the rate of re-conviction as not all offenses that occur result in convictions. Dr. Mandracchia maintained that based on Muston's Static–99 score, he only showed a forty-three percent of re-conviction. The statute, however, requires a finding as to whether the person is more likely than not to engage in predatory acts of sexual violence—not merely if the person is likely to be convicted of such acts. Significantly, Dr. Mandracchia testified that Muston was more likely than not to re-offend. In support, Dr. Mandracchia reiterated that the re-conviction rate, measured by the Static–99, is lower than the re-offense rate and discussed other relevant factors for his determination including: (1) Muston's extensive conduct violations; (2) his inability to control his behavior overall—particularly regarding repeated incidents of a lack of controlled sexual behavior; (3) the fact the 1994 sodomy occurred within approximately ninety days after Muston was released from confinement; (4) that Muston's treatment history showed either a lack of awareness of the seriousness of his situation or a lack of willingness to change it; and (5) that Muston's brief work history spoke to the instability of his life.

■■ "If a question exists as to whether proffered expert testimony is supported by a sufficient factual or scientific foundation, the question is one of *admissibility,* which must be raised by a timely objection or motion to strike." *Care and Treatment of O'Hara v. State,* 331 S.W.3d 319, 320 (Mo.App. S.D.2011). "Once an expert opinion has been admitted, as any other evidence, it may be relied upon for purposes of determining the *submissibility* of the case." *Id.* An appellant "cannot 'back-door' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument." *Id.*

---

**3.** All references to statutes are to RSMo 2000, unless otherwise indicated.

■ Muston's challenge as to the credibility of Dr. Mandracchia's testimony was a question for the trier of fact to decide. Dr. Mandracchia's opinions, and almost the entirety of his testimony, were admitted without objection. Dr. Mandracchia testified extensively as to the basis for his opinion that Muston was more likely than not to commit future predatory acts of sexual violence if not confined. Muston had the opportunity to—and did—challenge the credibility of Dr. Mandracchia's opinions through cross-examination. "The credibility and weight of testimony are for the fact-finder to determine. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). If there was in fact a conflict in the evidence, this was nothing more than a factual issue for the trier of fact to resolve in making its decision.[4]

Muston has not shown a complete absence of probative fact to support the judgment, and we find the evidence presented was more than sufficient for the trier of fact to determine by clear and convincing evidence that Muston's risk of re-offense was more likely than not. Muston's point is denied. The judgment of the trial court is affirmed.

BATES and SCOTT, JJ., concur.

**4.** *See also Care and Treatment of Barlow v. State,* 250 S.W.3d 725, 734 (Mo.App. W.D. 2008) ("[Appellant's] arguments about the fallacies of [the expert's] reasoning are nothing more than an attempt to have us reweigh the evidence in his favor."); *In re A.B.,* 334 S.W.3d 746, 754 (Mo.App. E.D.2011) ("Although Appellant criticizes the methodology utilized by [the expert] in coming to his conclusions, his testimony was admissible; his credentials are substantial; and after a review of the record, we find that the evidence which he presented to the jury was clear and convincing.").