

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF MILTON GEORGE a/k/a MILTON D. GEORGE, a/k/a MILTON DEWAYNE GEORGE, | ) ) ) ) | |
| | ) | |
| Appellant, | ) | **WD78928** |
| | ) | |
| v. | ) ) | **OPINION FILED:** |
| | ) | **January 24, 2017** |
| | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Kathleen A. Forsyth, Judge**

**Before Division Two:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Following a jury trial, Milton George was found to be a sexually violent predator (SVP) under § 632.480,[1] and he was committed to the custody of the Department of Mental Health. George appeals. He argues that the evidence was insufficient to prove clearly and convincingly that his diagnosis of schizophrenia made him more likely than not to commit future predatory acts

---

[1] Unless otherwise stated, statutory references are to the Revised Statutes of Missouri 2000, as updated through the 2014 Cumulative Supplement.

of sexual violence if not confined to a secure facility and that the State's use at trial of the term "sexually violent predator" unconstitutionally prejudiced the jury against him. We affirm.

## Background[2]

In 2009, George was convicted of rape and forcible sodomy and sentenced to eight years in the Department of Corrections. Prior to George's release, the Department provided written notice to the multidisciplinary team under § 632.483.4 that George may meet the criteria of a sexually violent predator. The multidisciplinary team determined that George appeared to meet the definition of a sexually violent predator, and it notified the Attorney General of its assessment. The prosecutors' review committee reviewed the assessment under § 632.483.5 and determined that George met the definition of a sexually violent predator. Prior to George's release, the State filed a petition seeking George's commitment to the Department of Mental Health as a sexually violent predator under the Sexually Violent Predator Act ("SVP Act"), § 632.480, et seq.

At trial, the State called Dr. Steven Mandracchia, a psychologist, in support of its petition. He was the only witness to testify. Dr. Mandracchia evaluated George to determine if he was an SVP. The doctor testified that he has done approximately forty similar evaluations and that he had reviewed George's records, including criminal records, social history records, treatment records, and records from the Department of Corrections. Based on George's treatment history, including forty to forty-five hospital admissions for schizophrenia over the past 25 years, as well as his behaviors, Dr. Mandracchia opined that George had the mental abnormality of schizophrenia.

Dr. Mandracchia testified that George had difficulty controlling his behavior, as demonstrated by his aggression toward others and attempt to harm himself, as well as his bizarre

---

[2] We "review[] the facts in the light most favorable to the verdict." *In re Murrell*, 215 S.W.3d 96, 100 n.3 (Mo. banc 2007).

sexual behaviors. The doctor said that, on several occasions, George was brought to psychiatric facilities because of his hypersexual behavior, which included exposing himself in public.

While in prison, George had multiple conduct violations for breaking rules, including a physical altercation with a fellow inmate and another with a guard. George had at least three violations that were of a sexual nature. Dr. Mandracchia testified that George urinated in an area of the cell where he should not have been urinating, in full view of an officer. George also masturbated in front of officers on two occasions; on one of the occasions, George rolled up his mattress and masturbated into it. Dr. Mandracchia said that, when instructed to stop, George refused. While in jail awaiting this trial, George fondled himself in front of other inmates on two occasions.

During his incarceration, George was so psychiatrically impaired that he was unable to participate in the sex offender treatment program, although he did complete a clinical review form. On the form, George indicated that he masturbated six times a day; had fantasies including voyeurism, exposing himself, and fetishes with objects; looked at pornographic materials; and had sexual activity with animals.

Dr. Mandracchia also relied on an actuarial evaluation, which determined that George was "in the moderate to moderately high range" to reoffend if not in a secure facility. Dr. Mandracchia testified that the actuarial test underestimated George's likelihood to commit sexually violent crimes if not in a secure facility, because it measured the likelihood only of a person being rearrested or reconvicted.

Based on this information, Dr. Mandracchia found that George was an SVP. Dr. Mandracchia opined that George's schizophrenia caused him to have serious difficulty

controlling his behavior and made him more likely than not to commit another predatory act of sexual violence if not placed in a controlled facility.

The jury found that George was an SVP. On May 12, 2015, the probate court issued its Judgment and Commitment Order finding that George was an SVP and committing him to the custody of the Department of Mental Health for control, care, and treatment until such time as George's mental abnormality had so changed that he was safe to be at large.

## Standard of Review

"Appellate review in an SVP case is limited to a determination of whether there was sufficient evidence admitted from which a reasonable jury could have found each necessary element by clear and convincing evidence." *In re A.B.*, 334 S.W.3d 746, 752 (Mo. App. E.D. 2011). "The appellate court does not reweigh the evidence but determines only whether the judgment was supported by sufficient evidence." *Id.* "Matters of credibility and weight of testimony are for the jury to determine." *Id.* "For that reason, the evidence is viewed in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences." *Id.* "A judgment will be reversed on insufficiency of the evidence only if there is a complete absence of probative facts supporting the judgment." *Id.*

Questions of law are reviewed *de novo*. *In re Murphy*, 477 S.W.3d 77, 81 (Mo. App. E.D. 2015).

## Analysis

"Missouri's SVP statute requires a finding that, to be committed, the individual 1) has a history of past sexually violent behavior; 2) a mental abnormality; and 3) the abnormality creates a danger to others if the person is not incapacitated." *In re Murrell*, 215 S.W.3d 96, 105 (Mo. banc

4

2007).  Under § 632.480(5)(a), an offender has a history of sexually violent behavior if he "[h]as pled guilty or been found guilty . . . of a sexually violent offense."  George does not dispute that rape and forcible sodomy are sexually violent offenses.  Once a history of sexual violence has been established, before an offender may be committed as an SVP, "the State must satisfy a two-prong test:  (1) the offender must suffer from a mental abnormality; (2) that makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility."  *A.B.*, 334 S.W.3d at 752.

George offers five points on appeal.  In his first three points, George argues that there was insufficient evidence to find him to be an SVP because the evidence was insufficient to demonstrate that it was more likely than not that he would engage in *predatory* acts of sexual violence in that:  (1) there was no evidence that George's mental abnormality, schizophrenia, predisposes him to commit *predatory* acts of sexual violence; (2) the State's expert testimony was without foundation because Dr. Mandracchia failed to specify that the threat of future sexual violence must be *predatory* and failed to define the term; and (3) there was no evidence that any future sexual violence George might commit would be for the primary purpose of victimization, a requirement for the behavior to be predatory.  In George's fourth and fifth points, he argues that he was deprived of a fair trial because the State was allowed to use the "inherently pejorative" phrase "sexually violent predator" at trial, and the phrase appeared in the instructions.

I.      **Predisposition to acts of predatory violence.**

In his first point, George claims that the State failed to prove that his mental abnormality, schizophrenia, predisposes him to commit sexual violence.  In support, George argues that, while Dr. Mandracchia did testify that George suffers from schizophrenia, Dr. Mandracchia never explicitly testified that schizophrenia predisposed George to commit predatory acts of sexual

violence. In fact, according to George, "Dr. Mandracchia's testimony established the opposite" because he "testified to his own opinion that 'it does not predispose people to commit sex crimes, when you say just the diagnosis of schizophrenia.'"

But George simply misunderstands that the SVP statute does not require proof of "a mental abnormality that, in and of itself, predisposes a person to commit sexually violent offenses." *Murrell*, 215 S.W.3d at 106. Rather, "Missouri's SVP statute . . . only require[s] 'evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated.'" *Id*. (quoting *Kansas v. Hendricks*, 521 U.S. 346, 357-58 (1997)). "Under [§] 632.480 . . . , 'mental abnormality' is (1) a congenital or acquired condition; (2) affecting the emotional or volitional capacity; (3) that predisposes the person to commit sexually violent offenses; (4) in a degree that causes the individual serious difficulty controlling his behavior." *Id*. George claims that Dr. Mandracchia's testimony did not establish the third element.

Dr. Mandracchia testified that George suffers from the "mental abnormality of schizophrenia," which affects George's volitional capacity, resulting in "repeated instances of inappropriate poorly controlled or apparently uncontrolled sexual behaviors," and which "[w]ould render him having serious difficulty controlling his behavior and being more likely than not to reoffend if not in a controlled environment." Dr. Mandracchia went on to testify that, by "reoffend," he meant "committing a predatory act of sexual violence." Thus, while Dr. Mandracchia's testimony was clear that schizophrenia does not necessarily predispose all individuals to commit predatory acts of sexual violence, it did affect George in that manner in that it rendered him unable to control his sexual behavior. Dr. Mandracchia's opinion was based on a review of documents in the record, which were of the type normally relied on by psychologists

6

when making a determination of whether someone is in fact an SVP. This evidence was sufficient for the jury to determine that George has a mental abnormality that predisposes him to commit sexually violent offenses.

George's first point is denied.

## II.   Failure to define "predatory."

In his second point, George argues that the State failed to provide the jury with "the correct legal standard" to prove that he had a mental abnormality. George again claims that Dr. Mandracchia never specifically testified that George was likely to commit "predatory acts" of sexual violence, as required by § 632.480(5). George further argues that Dr. Mandracchia failed to define "predatory" in his testimony. George argues that, because of these alleged shortcomings, Dr. Mandracchia's testimony "lacked foundation."[3] We disagree.

As noted *infra*, Dr. Mandracchia testified that George suffers from a mental abnormality, which "[w]ould render him having serious difficulty controlling his behavior and being more likely than not to reoffend if not in a controlled environment." Dr. Mandracchia then clarified that "reoffend" meant "committing a predatory act of sexual violence." Dr. Mandracchia plainly *did* testify that George was likely to commit predatory acts of sexual violence, and thus, George's first argument is without merit.

George next notes that the SVP Act defines "[p]redatory" as "acts directed towards individuals, including family members, for the primary purpose of victimization." § 632.480(3). George claims that Dr. Mandracchia never set forth this precise definition in his testimony, leaving

---

[3] "If a question exists as to whether proffered expert testimony is supported by a sufficient factual or scientific foundation, the question is one of *admissibility*, which must be raised by a timely objection or motion to strike." *In re Bradshaw*, 375 S.W.3d 237, 243 (Mo. App. S.D. 2012) (quoting *In re Muston*, 350 S.W.3d 493, 497 (Mo. App. S.D. 2011)). "Once an expert opinion has been admitted, as any other evidence, it may be relied upon for purposes of determining the *submissibility* of the case." *Id*. (quoting *Muston*, 350 S.W.3d at 497). "An appellant cannot 'back-door' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument." *Id*. (quoting *Muston*, 350 S.W.3d at 497).

7

the jury to speculate as to whether Dr. Mandracchia's definition was consistent with the statutory definition with which the jury was instructed. This argument is meritless because the record shows that the jury was not misled or left to speculate as to the meaning of the term in Dr. Mandracchia's testimony.

In support of his claim that Dr. Mandracchia was required to specifically define "predatory," George points to *Lee v. Hartwig*, 848 S.W.2d 496, 498-99 (Mo. App. W.D. 1992), and *McLaughlin v. Griffith*, 220 S.W.3d 319, 321 (Mo. App. S.D. 2007), negligence cases in which experts failed to define the proper legal standard—"negligence" and "standard of care" respectively—and their testimony was therefore found to be insufficient.

Of course "[l]egal or technical words occurring in the instructions should be defined." *In re Van Orden*, 271 S.W.3d 579, 586 (Mo. banc 2008). For example, "under MAI, . . . many definitions are required." *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 509, 509 n.5 (Mo. App. E.D. 1980) (citing to MAI definitions relating to negligence (MAI 11.00), uninsured motor vehicles (MAI 12.00), agency (MAI 13.00), right-of-way (MAI 14.00) and will contests (MAI 15.00)). "An expert who testifies," for example, "solely in terms of 'standards of care,' without reference to MAI 11.06 or comparable language, does not satisfactorily articulate the appropriate legal standard." *McLaughlin*, 220 S.W.3d at 321; *Lee*, 848 S.W.2d at 499 ("It was not an abuse of discretion to sustain the objection [to the expert's testimony as to negligence], in view of the failure of either party to define the term 'negligence.'").

But "predatory" is not a term defined in the MAI. And George offers no authority in support of his contention that, solely because a term is defined in a statute, that word constitutes a "legal or technical term," requiring testimony as to its definition. The State argues that "[t]he word 'predatory' does not need to be defined as it is commonly used and readily understandable."

"[T]he meaning of ordinary words used in their usual or conventional sense need not be defined." *Van Orden*, 271 S.W.3d at 586.

George correctly points out that the legislative definition of words controls, but he makes no attempt to explain how the statutory definition of "predatory" differs from the common meaning. In common usage, "the terms 'predator' or 'predatory' refer to either 'one that preys, destroys, or devours' or one 'disposed or showing disposition to injure or exploit others for one's own gain.'" *State v. Perry*, 275 S.W.3d 237, 247 n.6 (Mo. banc 2009) (quoting Webster's Third New Int'l Dictionary, 1785 (3d ed. 1993)). "When read with the grammatical modifier 'sexual,' the term refers to a person that either sexually preys on or is disposed or shows a disposition to sexually exploit others." *Id*. Section 632.480(3) defines "[p]redatory," as "acts directed towards individuals, including family members, for the primary purpose of victimization." We fail to see a meaningful distinction between the common definition of "predator" and its statutory definition in this context.

Even when a term does require definition, it "need not be recited in ritualistic fashion." *McLaughlin*, 220 S.W.3d at 321. Rather, "the expert's testimony in context should prove that the proper legal standard was used." *Id.* "[J]urors must know an expert's opinion is based on [the law] and not something else." *Id*.

Dr. Mandracchia testified that "the definitions [that] we work with . . . are all from statutes." Dr. Mandracchia further testified that:

> The statute itself basically just says that anybody who has—the words are "a congenital or acquired condition"—what that means is you are born with it or you get it later, . . . that predisposes a person to commit acts of sexual violence such that it causes them to have difficulty controlling their behavior. So that's leg one, having a mental abnormality that predisposes you to this. And leg two, that mental abnormality would have to make it more likely than not to reoffend if you're not confined.

And Dr. Mandracchia clarified that "reoffend" meant "committing a predatory act of sexual violence."

In context, Dr. Mandracchia's testimony makes it clear that his opinions are based on the definitions contained in § 632.480. Certainly, George was allowed to cross-examine Dr. Mandracchia as to his application of the statutory definitions. But for purposes of determining the foundation of Dr. Mandracchia's testimony as it relates to the submissibility of the State's case, Dr. Mandracchia's testimony showed that "the proper legal standard was used," and was "based on [the law] and not something else." *McLaughlin*, 220 S.W.3d at 321.

George's second point is denied.

### III. Evidence supported finding that George's likely future sexual violence would be predatory.

In his third point, George argues that the State offered insufficient evidence to prove that he is more likely than not to engage in *predatory* acts of sexual violence. Stated another way, George argues that there was no evidence that any sexually violent acts he might commit in the future will be predatory in nature. We disagree.

George correctly notes that the State must prove that George "suffers from a mental abnormality which makes [him] more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." § 632.480(5). And the State was required to prove "that [George] was not only more likely than not to sexually reoffend, but to so offend in a predatory and violent manner, as required by the definition of an SVP in § 632.480(5)." *In re Cokes*, 107 S.W.3d 317, 323-24 (Mo. App. W.D. 2003). Relying heavily on *Cokes*, and *In re Morgan*, 176 S.W.3d 200, 202 (Mo. App. W.D. 2005), George argues that the State's evidence was insufficient to prove that any future sexual conduct would be predatory in nature. We reject George's argument because his analysis of both cases is misleading.

10

George first relies on *Cokes*, a case very similar to this one, in which "Dr. Mandracchia testified that, in evaluating the appellant, he reviewed psychiatric, police, and prison records; interviewed the appellant; and administered two actuarial instruments." *Cokes*, 107 S.W.3d at 322. In addressing whether Cokes was an SVP, Dr. Mandracchia's testimony was as follows:

> Q. Did you try to make a determination as a result of this mental abnormality and looking at your actuarial measures, did you try to determine whether or not it was more likely than not Mr. Cokes would sexually reoffend?
>
> A. Yes, I did.
>
> Q. What is your determination?
>
> A. I determined that in terms of probability it is more likely than not that he will reoffend.

*Id*. The appellant argued that this testimony was insufficient to support a determination that he was likely to "reoffend in a predatory and violent way." *Id*. at 323. This court agreed, noting that Dr. Mandracchia "never render[ed] an opinion to that effect." *Id*. Accordingly, the court found that "the record reflects that Dr. Mandracchia's testimony lacked any detail that would have imparted to the jury the necessary knowledge to allow it to reasonably infer . . . that the appellant would not only sexually reoffend, but would do so in a violent and predatory manner." *Id*. at 323-24.

According to George, the State's case is similarly deficient here. But *Cokes* also determined that, despite the State's failure to prove its case, remand, as opposed to a reversal, was warranted, because the record showed that the State could make a submissible case. *Id*. at 325. This court held that, on remand, the State "could . . . present[] sufficient evidence to allow the jury to reasonably infer that the appellant was more likely than not to engage in predatory acts of sexual violence [by] simply ask[ing] Dr. Mandracchia whether, in his expert opinion, the appellant's likelihood of sexually reoffending would occur in a violent and predatory manner." *Id*.

11

Here, Dr. Mandracchia, relying on George's records and actuarial tools, testified that George had a mental abnormality that "[w]ould render him having serious difficulty controlling his behavior and being more likely than not to reoffend if not in a controlled environment." And "by reoffend," Dr. Mandracchia testified that he "mean[t] committing a predatory act of sexual violence." This is precisely the testimony and evidence that, in *Cokes*, this court said would be sufficient to make a submissible case that an offender is an SVP.

George implies that this aspect of the holding in *Cokes* was overruled "two years later in *Morgan*," where the State's expert did testify that the appellant was "more likely than not to commit future predatory acts of sexual violence," but the testimony was still held to be insufficient. *Morgan*, 176 S.W.3d at 210-11. But George again misstates the holding.

In *Morgan*, the State's expert relied "on the evidence of the appellant's past acts of sexual violence, and . . . the results from several 'risk assessments' [the expert] conducted." *Id.* at 211. Based on these factors, the expert opined that "the appellant was more likely than not to engage in future predatory acts of sexual violence if not confined in a secure facility." *Id.* at 203. The court determined that, under the present statutory definition, "the State's evidence would have been sufficient to demonstrate that the appellant's prior acts of sexual violence were predatory in nature such that the State would have made a submissible case on the issue of whether he was more likely than not to engage in future acts of sexual violence." *Id.* at 207. However, the State had "stipulated and agreed to the use of the prior . . . definition of 'predatory act' to be used in the verdict director." *Id.* And under "the prior definition of 'predatory acts' found in § 632.480(3) [RSMo 1999], the State was required to prove . . . that he was more likely than not to engage in 'acts directed towards strangers or individuals with whom relationships have been established or promoted for the primary purpose of victimization.'" *Id.* at 208. Accordingly, "it was not enough that the act was

12

for the primary purpose of victimization." *Id*. at 206. "There had to be evidence that a relationship had been established or promoted with the victim for the primary purpose of victimization." *Id*. at 207. In *Morgan*, "the State did not produce any evidence from which it could be reasonably inferred by the jury that, after the initial relationships were established with the victims, the appellant targeted them for victimization by intentionally cultivating close, trusting relationships with them," and therefore failed to meet its burden to prove that the appellant was more likely than not to engage in predatory acts of sexual violence under the applicable definition. *Id*.

Again, under the current statute, the State is required to prove that George is "more likely than not to engage in predatory acts of sexual violence," § 632.480(5), which is defined as "acts directed towards individuals, including family members, for the primary purpose of victimization." § 632.480(3). The higher standard that the State stipulated to in *Morgan* is inapplicable. In *Morgan*, "[t]he critical issue . . . [was] not whether the appellant was likely to re-offend in a sexually violent manner." *Morgan*, 176 S.W.3d at 211. Rather, "whether the State made a submissible case ultimately turned on which version of the definition of 'predatory act' was used." *Id*. at 207. There was no question that the State's expert's reliance on "the appellant's prior acts of sexual violence and the assessment results," *id*. at 211—much less than Dr. Mandracchia relied on here—was "sufficient to demonstrate that the appellant's prior acts of sexual violence were predatory in nature." *Id*. at 207.

George's third point is denied.

**IV.    Use of the phrase "sexually violent predator" is not prejudicial.**

Finally, in George's fourth and fifth points, he challenges the use of the phrase "sexually violent predator" by the State during trial and in the jury instructions. In his fourth point, George

13

complains of the State's use of the phrase throughout trial, and in his fifth point, he argues that it should not have been used to instruct the jury.

George relies heavily on *Perry*, a trial for first-degree child molestation, in which the defendant challenged two comments made by the prosecution, arguing that they were inherently prejudicial. *Perry*, 275 S.W.3d at 245-46. The first challenged statement was, "This was a touch done by a child molester." *Id.* at 246. Certainly, "child molester" is an exceedingly pejorative term. But the Supreme Court brushed aside the argument that the defendant was prejudiced by the language because the defendant "was charged with child molestation, and the whole premise of the prosecution was that [the] touch was done by a child molester and for the purpose of sexual gratification." *Id.* "There was no error . . . in making this argument[, because t]he prosecutor is allowed to make arguments based on facts in evidence." *Id.*

The second comment that the defendant in *Perry* challenged as inherently prejudicial was "the prosecutor's use of the term 'sexual predator'" to describe the defendant. *Id.* This comment the Court found to be "troublesome," in part because the term is "inherently pejorative." *Id.* at 246, 247. But the Court clarified that it was not the pejorative nature of the term, itself, that made the statement objectionable. Rather, the statement was objectionable because the defendant "had not been found to be a sexual predator nor would the offense for which he was on trial qualify him automatically as one were he convicted." *Id.* at 246-47. The statement therefore "called for the jury to speculate as to what [the defendant] might become in the future in deciding his guilt, rather than deciding his guilt of the crime for which he was charged." *Id.* at 247.

Here, there were two instances during closing argument in which the State arguably called George an SVP. First, the State stated that "we are asking you today to make the finding that Mr. George is indeed a sexually[]violent predator under Missouri law . . . because he is a

14

sexually[]violent predator . . . [under] the definition you have learned about today." Second, the State argued that, "[u]nder the law, [George] meets the definition of a sexually[]violent predator." And of course Dr. Mandracchia testified generally that George meets the definition of a sexually violent predator.

These uses of the phrase are plainly allowable under *Perry*. Each use of the phrase "sexually violent predator" by the State was in "arguments based on facts in evidence," which the State is allowed to make. *Id.* at 246. Moreover, there is no concern that the jury would have to "speculate as to what [George] might become in the future in deciding his guilt, rather than deciding his guilt of the crime for which he was charged." *Id.* at 247. The specific issue in this trial was whether George, based on his past conduct and current mental abnormality, was "more likely than not to engage in *[future]* predatory acts of sexual violence if not confined in a secure facility." *A.B.*, 334 S.W.3d at 752.

George's reliance on *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992), is similarly misplaced. In *Whitfield*, "the prosecutor referred to defendant as a 'mass murderer' four times and as a 'serial killer' three times" during closing argument. *Id.* at 513. The Court noted that "[t]he terms 'mass murderer' and 'serial killer' are pejorative names associated with a small ghoulish class of homicidal sociopaths who repeatedly and cruelly murder for no apparent motive than to satisfy a perverse desire to kill or cause pain." *Id.* The Court then determined that "[n]o evidence suggests that the defendant's prior homicides were of this character," and concluded that "[t]he use of these words is name calling designed to inflame passions of jurors." *Id.* "Comments designed solely to inflame jurors against the defendant by associating him with heinous crimes not in the record is always error, although not always reversible error." *Id.*

15

Here, the State did associate George with heinous crimes—rape and forcible sodomy. But George does not deny that he committed those crimes, and presenting evidence of those crimes was necessary to the State carrying its burden. And the State's use of the phrase "sexually violent predator" was in the context of arguing to the jury that the evidence proved that George is an SVP. George does not dispute the sufficiency of this evidence, other than the points that we have already rejected. Accordingly, the State's reference to George being an SVP were not "designed solely to inflame jurors against the defendant by associating him with heinous crimes not in the record." *Id*. Rather, they were assertions wholly based on the evidence, which the State was required to prove under § 632.480. George has provided no authority holding that this type of argument based on the evidence is objectionable, even if the term used would normally be considered pejorative, and we are aware of none.

George's argument that the phrase "sexually violent predator" is so inherently prejudicial as to automatically deprive one of a fair trial has also been unanimously rejected by courts that have considered the issue. Our Supreme Court has held, at least under plain error review, that the phrase "sexual predator" does not necessarily "decisively affect[] the jury's determination sufficiently to deny . . . a fair trial." *Perry*, 275 S.W.3d at 248. Other states have held that, in cases brought to determine whether an offender should be confined as an SVP, "[t]he term 'sexually violent predator' needed to be defined to the jury and the prosecution had to prove . . . that [the offender] fit that definition." *People v. Field*, 204 Cal. Rptr. 3d 548, 559 (Cal. Ct. App. 2016). Accordingly, "[t]here was nothing improper about the use of the term 'sexual violent predator' during the trial." *Id*. *See also Malone v. State*, 405 S.W.3d 917, 926-27 (Tex. Ct. App.

16

2013) (holding that use of the phrase "sexually violent predator" in an SVP case does not violate the right to a fair trial).[4]

In George's fifth point, he argues that "the emotionally charged phrase ('sexually violent predator')," which was used in Instructions 5, 6, 7, and the verdict form, "inflamed the jury, was argumentative, and favored the State's position." Having determined that the use of the phrase "sexually violent predator" is not prejudicial when used in a trial to determine whether an individual is an SVP, there is little reason to believe that the phrase would be prejudicial when instructing the jury. But the State argues that we need not review this argument at all because Instruction 5, which includes the phrase "sexually violent predator," was submitted by George himself, and provided to the jury over the State's objection. We agree.

It is axiomatic that "[a]ppellate courts will not reverse a trial court on the basis of an invited error." *Floyd v. Dep't of Mental Health*, 452 S.W.3d 154, 156 n.2 (Mo. App. W.D. 2014) (quoting *Roberts v. Roberts*, 432 S.W.3d 789, 796 (Mo. App. W.D. 2014)). And a party invites error when it offers an instruction and then complains about the language contained in that instruction. *State v. Oudin*, 403 S.W.3d 693, 697-98 (Mo. App. W.D. 2013); *see also In re Scates*, 134 S.W.3d 738, 742 (Mo. App. S.D. 2004) (rejecting as "disingenuous" appellant's argument related to language of an instruction when appellant's instruction contained identical language).

George responds that he offered Instruction 5 only "after the trial court denied his motion and objections to use of the term in the instructions." While George offers no additional argument

---

[4] George argues for the first time in his reply brief that "[a] recent study confirmed the prejudice and bias inherent in the term's use in legal proceedings." Even if George had not waived the claim by raising it for the first time in a reply brief, *Caranchini v. Missouri Bd. of Law Examiners*, 447 S.W.3d 768, 772 (Mo. App. W.D. 2014), we are unable to review the purported study because George failed to provide it to the court in any accessible format. But even if we accept George's recitation of the findings of the study—that jurors are more likely to believe that a convicted felon should be placed on parole if they are told that the offender is a "felon" than if they are told the offender is an SVP—the study does not support George's position. The jurors here were not told that George has ever been found to be an SVP. Rather, they were provided evidence about his felonies and mental abnormality, and asked to determine whether he is an SVP.

17

or authority, we presume that he is referring to cases "distinguish[ing] between the party who invites error and the party who yields to it on demand of the court." *Myers v. Buchanan*, 333 S.W.2d 18, 24 (Mo. banc 1960). But as George himself notes, "[t]he clear purpose in offering Instruction 5 was to include the definition of 'clear and convincing evidence,'" and "it is not necessary to denominate a label in . . . Instruction 5 . . . while simply, briefly and impartially instructing the jury without argument." We agree. George could easily have crafted an instruction defining the concept of clear and convincing evidence without the use of the term "sexually violent predator." But having used the phrase in his own proposed instruction, he cannot now claim that it was error for the phrase to be included in the jury instructions. *Oudin*, 403 S.W.3d at 698 n.10 ("where a defendant submits a faulty instruction, the defendant waives appellate review as to the specific defect presented in the proffered instruction, regardless of whether the court ultimately uses the proffered instruction or the State's version containing the same defect").

George's fourth and fifth points are denied.

### Conclusion

Having found no error, the judgment of the probate court is affirmed.

Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge,
and Anthony Rex Gabbert, Judge, concur.

18