

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE MATTER OF THE CARE )
AND TREATMENT OF H.R., a/k/a )
H.J.R., )
            )
          Appellant, )    WD87338
            )
v. )    **OPINION FILED:**
            )    **September 30, 2025**
            )
STATE OF MISSOURI, )
            )
          Respondent. )

**Appeal from the Circuit Court of Ray County, Missouri**
**The Honorable Lori J. Baskins, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Cynthia L. Martin, Judge, and Janet Sutton, Judge

H.R.[1] appeals the judgment of the Circuit Court of Ray County, Missouri ("trial

court"), which committed H.R. to the Department of Mental Health ("DMH") as a

---

[1] Because the psychological reports and treatment records regarding H.R.'s diagnosis were discussed extensively by the expert witness in the trial court below and are likewise referenced in today's ruling, we refer to H.R. by initials to maintain the confidentiality of all such reports and treatment records, as required by section 632.513 (Supp. IV 2025) and Missouri Supreme Court Operating Rule 4.24(c). All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through May 18, 2022, unless otherwise indicated, and all rule references are to I MISSOURI COURT RULES – STATE 2025.

sexually violent predator under Missouri's Sexually Violent Predator Act.  H.R. argues the trial court erred because the judgment was not based on clear and convincing evidence that he is more likely than not to engage in future predatory acts of sexual violence if not confined to a secure facility.  We affirm.

**Factual and Procedural History[2]**

In 1997, H.R. was convicted of sexual misconduct relating to his solicitation for sex to a ten-year-old female.  H.R. was not imprisoned on this first offense but ordered to pay a fine.

In 1999, H.R. pled guilty to child molestation in the second degree.  At the time, H.R. was twenty years old, and the female victim was thirteen years old.  On the evening of the offense, H.R.'s mother was babysitting the child victim at her home.  H.R. came home intoxicated, and while the victim was asleep, he touched the victim's vagina and masturbated.  H.R. also attempted to penetrate the victim's vagina.  H.R. served a three-year sentence in the Missouri Department of Corrections and was released thereafter.

In 2009, H.R. was convicted of enticement of a minor.  In 2008, H.R. believed he was communicating online with a thirteen-year-old female child when, in fact, it was a law enforcement officer posing as a young female.  Intending to have sex with her, H.R. traveled to meet the child, purchasing lubricant and condoms on the way, and was

---

[2] In reviewing a claim that there is insufficient evidence to support a sexually violent predator determination, "the evidence is viewed in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences." *Care & Treatment of Underwood v. State*, 519 S.W.3d 861, 871 (Mo. App. W.D. 2017).

arrested upon arrival. He pled guilty to enticement of a minor and served five years in prison for this conviction.

Approximately eight months after his release from prison from the 2009 conviction, H.R. again began communicating online with what he believed to be a twelve-year-old female child when, in fact, the person he was communicating with was an adult impersonating a young female. H.R. asked the alleged female child for child pornography and for pictures of her younger sisters. H.R. also asked the child to sell her body and to come to Missouri to have sex with him. H.R. testified at trial that had the child's younger sisters traveled to Missouri and had he found them attractive, he would have attempted to have sex with them as well. H.R. pled guilty to enticement of a minor and was sentenced to eight years in prison for this conviction.

While incarcerated, H.R. had three opportunities to participate in the Missouri Sex Offender Program ("MOSOP"). The first time, H.R. was terminated for lack of progress and failure to complete required tasks assigned to MOSOP participants. The second time, H.R. declined to participate because he understood that his participation in MOSOP would not have reduced his criminal sentence. The third time, H.R. was again terminated from the program for failure to complete assignments.

On May 18, 2022, in anticipation of H.R.'s release from his fourth conviction for sexual misconduct offenses involving minor female children, the State of Missouri filed a petition alleging H.R. was a sexually violent predator ("SVP"), as defined by the Sexually Violent Predator Act, § 632.480(5), and requested an order committing H.R. to the Department of Mental Health.

3

At trial,[3] the State presented testimony from a psychologist and certified forensic examiner ("Psychologist")[4] whom the State had hired to perform an SVP evaluation of H.R. Psychologist interviewed H.R. on January 10, 2023. She testified at trial that, in her opinion and within a reasonable degree of psychological certainty, H.R. met the definition of an SVP under Missouri law.

Specifically, Psychologist testified without objection that H.R. had been convicted of a sexually violent offense and he suffered from a mental abnormality, pedophilic disorder, which made him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. Psychologist testified extensively, without objection, about the basis for her opinion, including H.R.'s diagnosis of pedophilic disorder, facts gathered from her interview with H.R., numerous patient treatment records regarding H.R., H.R.'s numerous failures at treatment in MOSOP, the results of actuarial assessments administered to H.R., the underlying facts of his detected and undetected sex offenses, and other dynamic risk factors pertinent to her conclusion that H.R. was an SVP.

H.R. moved for a directed verdict at the close of all the State's evidence and at the close of all the evidence. The trial court denied the motions. After consideration of all the evidence, the trial court found H.R. was an SVP and ordered that he be committed to the custody of the Department of Mental Health for control, care, and treatment in a

---

[3] H.R. waived a jury trial, and a bench trial was held on June 10, 2024.
[4] Pursuant to Missouri Supreme Court Operating Rule 2.02(c), we do not identify the names of non-party witnesses.

secure facility until such time as his mental abnormality has so changed that he is safe to be released.  H.R. appeals.

## Standard of Review

"Appellate review in an SVP case is limited to a determination of whether there was sufficient evidence admitted from which a reasonable jury could have found each necessary element by clear and convincing evidence." *Care & Treatment of George v. State*, 515 S.W.3d 791, 795 (Mo. App. W.D. 2017) (quoting *In re Care & Treatment of A.B.*, 334 S.W.3d 746, 752 (Mo. App. E.D. 2011).  "The appellate court does not reweigh the evidence but determines only whether the judgment was supported by sufficient evidence." *Id.*  "Ultimately, we require that the evidence, and reasonable inferences drawn from it, establish all elements and not leave any substantive issue to speculation." *Care & Treatment of White v. State*, 576 S.W.3d 285, 295 (Mo. App. W.D. 2019).  The judgment will be reversed on insufficiency of the evidence "only if there is a complete absence of probative facts supporting the judgment." *Care & Treatment of Underwood v. State*, 519 S.W.3d 861, 871 (Mo. App. W.D. 2017) (quoting *George*, 515 S.W.3d at 795-96).

## Analysis

To commit an individual to the Department of Mental Health as an SVP, the State must prove by clear and convincing evidence that the individual "(1) has committed a sexually violent offense; (2) suffers from a mental abnormality; and (3) this mental abnormality makes the person more likely than not to engage in predatory acts of violence if not confined in a secure facility." *Care & Treatment of Derby v. State*, 557

5

S.W.3d 355, 359 (Mo. App. W.D. 2018) (citation modified) (quoting *Care & Treatment of Kirk v. State*, 520 S.W.3d 443, 448-49 (Mo. banc 2017)). "[T]he individual must *presently* suffer from a mental abnormality and *presently* pose a danger to society if released." *Id.* at 371-72.

H.R. does not contest that he has committed a sexually violent offense in the past or that he suffers from a mental abnormality. Rather, in his sole point on appeal, H.R. argues only that the trial court erred in concluding that sufficient evidence supported its finding on the third element—that H.R. is more likely than not to engage in predatory acts of violence if not confined to a secure facility. We disagree and conclude that there was sufficient, substantial, and even overwhelming evidence in the record regarding H.R.'s *present* likelihood to engage in predatory acts of violence if not confined to a secure facility.

**Preliminary Issue of H.R.'s Unpreserved Admissibility of Evidence Argument**

We first note that the bulk of H.R.'s complaint about the *sufficiency* of evidence is that Psychologist's testimony was not based upon a proper foundation and, thus, should not have been considered by the trial court in arriving at its judgment. This is nothing more than an improper back-door attempt by H.R. to make an *admissibility* argument under the guise of a *sufficiency* of the evidence challenge on appeal—and in a scenario where H.R. did not object to the *admissibility* of Psychologist's testimony at trial. We will not permit such a disguised attack on the trial court's judgment. *See George*, 515 S.W.3d at 797 n.3 ("An appellant cannot 'back-door' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument.") (quoting

*Care & Treatment of Bradshaw v. State*, 375 S.W.3d 237, 243 (Mo. App. S.D. 2012));

*Derby*, 557 S.W.3d at 371 n.17 ("Derby's sufficiency of the evidence argument appears

to be a guise for a challenge to the factual or scientific foundation of the experts'

testimony.").

To preserve an admissibility argument for our review, H.R. was required to object

to Psychologist's opinions when presented at trial. "If a question exists as to whether the

proffered opinion testimony of an expert is supported by a sufficient factual or scientific

foundation, the question is one of admissibility. It must be raised by a timely objection or

motion to strike." *Derby*, 557 S.W.3d at 371 n.17 (quoting *In re Care & Treatment of

Mitchell*, 544 S.W.3d 250, 257 (Mo. App. S.D. 2017)); *see also George*, 515 S.W.3d at

797 n.3; *In re Care & Treatment of Sebastian*, 556 S.W.3d 633, 644 n.5 (Mo. App. S.D.

2018).

H.R. did not raise such an objection at trial, and H.R.'s sole point on appeal

challenges the sufficiency of the evidence to support the judgment, not the admissibility

of Psychologist's opinion. In failing to make any objection to the foundation of

Psychologist's opinion at trial, H.R. conceded the adequacy of its foundation and

admissibility. Thus, the trial court was free to consider Psychologist's opinions and

testimony *in its entirety* for the purpose of determining whether the State met its

evidentiary burden. "Once opinion testimony [of an expert] has been admitted, as any

other evidence, it may be relied upon for purposes of determining the submissibility of

the case. The natural probative effect of this testimony is a consideration for the

[factfinder]." *Derby*, 557 S.W.3d at 371 n.17 (quoting *Mitchell*, 544 S.W.3d at 257).

7

Accordingly, H.R. has waived any argument to the *admissibility* of Psychologist's opinions at trial, and we will not consider such *admissibility* arguments in our analysis of the sufficiency of the evidence supporting the trial court's judgment. Instead, the entirety of Psychologist's opinions below that were not objected to at trial are an appropriate part of the trial court evidentiary record for consideration and review on appeal.

**Overwhelming Evidence of H.R.'s SVP Status**

"An expert's testimony that a respondent currently suffers from a mental abnormality and that the mental abnormality makes the individual more likely than not to engage in predatory acts of violence if not confined in a secure facility will support an individual's commitment to the DMH as a sexually violent predator." *Derby*, 557 S.W.3d at 372; *see also Grado v. State*, 559 S.W.3d 888, 902 (Mo. banc 2018) ("The jury heard Dr. Witcher's expert opinion that Mr. Grado was more likely to do so unless confined. She extensively testified regarding the basis for her opinion. . . . The evidence was sufficient to support the jury's finding that because of Mr. Grado's mental abnormality, he was more likely than not to commit a future predatory act of sexual violence if not confined to a secure facility." (citations omitted)); *Underwood*, 519 S.W.3d at 878 ("Such testimony [from an expert witness] is 'sufficient to make a submissible case that an offender is [a sexually violent predator].'" (second alteration in original)); *George*, 515 S.W.3d at 800 ("Dr. Mandracchia, relying on George's records and actuarial tools, testified that George had a mental abnormality that would render him having serious difficulty controlling his behavior and being more likely than not to reoffend if not in a controlled environment. And by reoffend, Dr. Mandracchia testified

that he meant committing a predatory act of sexual violence.  This is precisely the testimony and evidence that, in *Cokes*, this court said would be sufficient to make a submissible case that an offender is an SVP." (citation modified)); *In re Care & Treatment of Cokes*, 107 S.W.3d 317, 325 (Mo. App. W.D. 2003) ("[T]he record indicates that the State could have presented sufficient evidence to allow the jury to reasonably infer that the appellant was more likely than not to engage in predatory acts of sexual violence had the State's counsel simply asked Dr. Mandracchia whether, in his expert opinion, the appellant's likelihood of sexually reoffending would occur in a violent and predatory manner.").

Here, Psychologist testified unequivocally that, "[i]t's my opinion . . . to a reasonable decree of psychological certainty that H.R. is more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility."  But, this opinion was not a mere conclusion without factual or scientific basis; instead, Psychologist testified extensively about the factual and scientific data that supported Psychologist's conclusion, to-wit:

Psychologist testified that she relied on the results of two actuarial assessments, the Static-99R and the Stable-2007,[5] in reaching her opinion that H.R.'s pedophilia diagnosis makes him more likely than not to engage in predatory acts of sexual violence.

---

[5] On the Static-99R actuarial assessment, H.R.'s score placed him in the above-average category for future sexual recidivism risk; and, on the Stable-2007 actuarial assessment, H.R.'s score placed him in the high-risk category for future sexual recidivism risk.

An expert may base her opinion—that, to a reasonable degree of professional certainty, an offender is more likely than not to commit future sexually violent acts—on actuarial instruments, including the Static-99R and the Stable-2007, when used in conjunction with an independent evaluation of the offender's risk factors. *See Derby*, 557 S.W.3d at 362 ("To determine whether Derby was more likely than not to commit a predatory act of sexual violence if not confined in a secure facility, Dr. Griffith also performed a Static-99R risk assessment . . . . Dr. Griffith also used another instrument called the Stable-2007, which measures dynamic risk factors not captured by the Static-99R. . . . Dr. Griffith also examined additional risk factors relating to sexual recidivism."); *In re Care & Treatment of Stiles*, 662 S.W.3d 322, 327 (Mo. App. S.D. 2023) ("Dr. Jensen also concluded that Appellant is more likely than not to commit future acts of predatory sexual violence. He came to this conclusion by using STATIC-99R, a 'widely accepted' psychological evaluation tool, and by assessing a number of 'dynamic' risk factors, including impulsivity, aggressiveness, relationship history, and the presence of deviant sexual interests.").

Additionally, Psychologist testified to an array of additional risk factors that indicated H.R. was more likely than not to reoffend if not confined.

Psychologist's testimony established that H.R. was diagnosed with pedophilia, nonexclusive type, and that he had a documented history of predatory acts and attempted predatory acts directed at minors, some of which failed to occur only because his efforts were thwarted by law enforcement or a third party. *See Sebastian*, 556 S.W.3d at 644 ("[T]he evidence showed that Sebastian's offenses against three young girls within a year

10

before he turned 16—although not the basis for diagnosis—showed an accelerated pattern that was interrupted *only because he was caught*. At 17, soon after his release from juvenile sex offender treatment, Sebastian resumed his behavior, offending again against a 7-year-old, before deciding to reoffend against his previous victim." (emphasis added)). "Past predatory acts of sexual violence are admissible to show that the alleged SVP is more likely than not to engage in future predatory acts of sexual violence." *Care & Treatment of Morgan v. State*, 176 S.W.3d 200, 208 (Mo. App. W.D. 2005); *see George*, 515 S.W.3d at 801 ("There was no question that the State's expert's reliance on the appellant's prior acts of sexual violence and the assessment results—much less than Dr. Mandracchia relied on here—was sufficient to demonstrate that the appellant's prior acts of sexual violence were predatory in nature." (citation modified)).

Here, H.R.'s sexually predatory behavior involving minor females continued time and time again after he had been apprehended and incarcerated on numerous occasions in the past for sexual offenses directed at female minors. In some instances, H.R. would return to predatory behavior within months of his prison release. And, though there were gaps of years between some of his predatory acts, most of those gaps were *due to his incarceration*. Further, Psychologist testified that H.R. admitted to her during her clinical evaluation interview of H.R. that he had two additional undetected victims of his past sexual misconduct—involving a twelve-year-old female and a seven-year-old female.

H.R. demonstrated that he was not serious about equipping himself with coping mechanisms by failing in his participation in MOSOP not once, but twice; and, he rejected an opportunity to participate in MOSOP a third time because he saw no practical

11

effect it would have on his criminal sentence. *See White*, 576 S.W.3d at 300 ("The evidence further established that White had failed to complete the Missouri Sex Offender Program while in prison."). Further, Psychologist's review of the MOSOP records indicated that H.R.'s behavior in the MOSOP treatment program was flippant. In his treatment group, he laughed when presenting an assignment on victim disclosure and made inappropriate comments to other participants, including one where he stated he "missed his kiddie porn."

Psychologist's testimony also established that H.R.'s behavior showed serious difficulty in controlling his urges to engage in sexual activity with minors. Psychologist testified that H.R.'s sexual urges stemmed from loneliness and boredom; that he was preoccupied with sex and used it as a coping mechanism; that he had poor problem-solving skills; and that he had masturbated to thoughts of minors while criminally detained. H.R. told Psychologist that he became aroused when he had seen children on television approximately three to four months prior to Psychologist's January 2023 clinical interview of H.R. *See White*, 576 S.W.3d at 300 ("White also reported to Griffith that he 'lately' had been masturbating to sexual thoughts of children."). Further, even H.R. understood and admitted that he was at a higher risk of reoffending than most people.

Based upon our review of the record, this is not a case where there is a "complete absence of probative facts supporting the judgment." *In re Care & Treatment of Morgan*, 398 S.W.3d 483, 485 (Mo. App. S.D. 2013). Instead, the record before us, through Psychologist's testimony, demonstrates sufficient, substantial, and overwhelming

12

evidence that H.R. was more likely than not to engage in future predatory acts of sexual violence. Hence, H.R.'s sufficiency-of-the-evidence challenge on appeal is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Cynthia L. Martin, Judge, and Janet Sutton, Judge, concur.